May 7, 1925.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

For the very satisfactory reasons assigned by his Honor, the Circuit Judge, the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES WATTS, FRASER and MARION and MR. ACTING ASSOCIATE JUSTICE JAS. W. JOHNSON concur.

MR. JUSTICE COTHRAN did not participate.

---

## 11786

### BARNWELL v. MATTHEWS *ET AL.*

#### (128 S. E., 712)

1. CONSTITUTIONAL LAW—ILLEGALITY OR UNCONSTITUTIONALITY OF LEGISLATVE ENACTMENT MUST CLEARLY AND INDUBITABLY APPEAR TO WARRANT SETTING ASIDE.—Illegality or unconstitutionality of legislative enactment must clearly and indubitably appear to warrant setting aside.

2. COUNTIES—LEGISLATURE MAY AUTHORIZE COUNTY TO INCUR DEBTS, SUBJECT ONLY TO 8 PER CENT. LIMITATION.—Legislature has power to authorize county to incur debts and issue securities therefor, subject only to constitutional limitation, under Const. Art. 10, § 5, that bonded debt shall not exceed 8 per cent. of assessed value of taxable property.

3. STATUTES—LEGISLATIVE DETERMINATION OF NATURE OF OBLIGATION WHICH COUNTY IS AUTHORIZED TO INCUR IS ENTITLED TO GREAT WEIGHT.—Legislative determination of nature of indebtedness which it authorizes county to incur is entitled to great weight, and Courts should not adopt different view unless compelled to do so.

4. COUNTIES—THAT OBLIGATIONS OF COUNTY ARE UNDER COUNTY SEAL DOES NOT AFFECT THEIR STATUS AS NOTES OR BONDS W~ ˪IN CON-STITUTIONAL LIMITATION ON BONDED INDEBTEDNESS.—Fact that obligations proposed to be issued by governing commission of county are to be under seal of county has no bearing on question whether they are notes or bonds within 8 per cent. limitation prescribed by Const. Art. 10, § 5.

5. COUNTIES—PRIMARY OBLIGATON SECURED BY TAX IS ESSENTIAL TO A "BONDED DEBT," WITHIN MEANING OF CONSTITUTIONAL LIMITATION AND BONDED DEBT OF COUNTY.—It is essential to a bonded debt,

within the meaning of Const. Art. 10, § 5, that there be a primary obligation on the political subdivision involved, secured by a tax levied on property holders therein.

6. COUNTIES—OBLIGATIONS OF COUNTY INCURRED IN ROAD CONSTRUCTION HELD NOT PART OF "BONDED DEBT," WITHIN CONSTITUTIONAL LIMITATION.—Obligations incurred by county for road construction pursuant to Act March 21, 1924 (33 St. at Large, p. 1193), and Act April 1, 1925, for the payment of which the State was primarily liable, *held* mere notes of county, and not a part of its bonded debt, within constitutional limitation, Const. Art. 10, § 5.

7. HIGHWAYS—COUNTY'S CONSTRUCTION OF PART ONLY OF ROADS AUTHORIZED BY STATUTE COMPOSING PART OF STATE HIGHWAY SYSTEM, AND ISSUANCE OF PART ONLY OF NOTES IN PAYMENT, HELD PROPER. —Under Act March 21, 1924 (33 St. at Large, p. 1193), and Act April 1, 1925, specifically authorizing county's construction of portion of state highway under agreement whereby State reimbursed county, it was competent for county governing commission to build a part only of the roads specifically designated, and to issue for that purpose a part only of the notes authorized.

Before SHIPP, J., Florence, May, 1925.  Affirmed.

Action by F. H. Barnwell against E. M. Matthews and others.  Decree for defendants and plaintiff appeals.

The decree below was as follows:

The plaintiff, as a resident and taxpayer of Florence County, is seeking in this action to enjoin the defendants from borrowing the sum of $225,000 under the authority of an Act of the General Assembly of South Carolina, approved April 1, 1925, for the purpose of building three roads described in the Act, and from issuing notes of the County as security therefor.

The gravamen of the complaint is that such issue of notes constitute a bonded debt of the County, and that if issued such bonded debt will be greatly in excess of the 8 per cent. limitation prescribed by Section 5 of Article 10 of the Constitution.

In their answer, the defendants admit the material allegations of fact in the complaint, and, while denying that the amount of additional bonds the County can legally issue before reaching the constitutional limit is not correctly

set forth, admits that if treated as bonds the entire issue of notes would make the county's bonded debt considerably exceed such limit. By way of additional and affirmative defense, the defendants then proceed to set out in detail the facts relating to the issuance of such notes. The gist of their contention is that the Act of the Legislature of South Carolina of March 21, 1924 (33 Stat., 1193), commonly known as the "Pay-as-You-Go Act," made provision for the construction and maintenance by the State of South Carolina of "a statewide connected system * * * of dependable types of public roads," that by the express terms of this Act the State Highway Commission was authorized to permit any county to build any of the roads of such system and to be reimbursed therefor under a proper contract with the commission; that the Act of April 1, 1925, in furtherance of this plan for the building of such state-wide system of roads, merely made provision for the county to construct three of such roads, for which it is to be reimbursed by the State; that the notes authorized for this purpose are not primary obligations of the county, but are being issued for construction work for which the State under the express terms of the "Pay-as-You-Go Act" is directly responsible, are secured by the reimbursement contracts with the highway commission, and the tolls derived from the toll bridges of which the county is part owner, and that liability for the payment of such notes can fall on the taxpayer only in the event of the failure to meet them from these other sources; and finally that bonds for a considerable amount can be still issued by the county, and that the difference between such amount and the total of $225,000 authorized by the Act can be issued in notes that can be retired by funds available from securities pledged without recourse to any other source of revenue. From all of this, the conclusion is drawn that the notes are not bonds, but contingent obligations of the county, and therefore will constitute no part of its bonded debt. In the affirmative defense, the

position is further taken that the Act of April 1, 1925. must be construed in connection with the "Pay-as-You-Go Act," and under such construction, treating the proposed notes as bonds, it is competent for the county, through the defendants as its duly constituted authorities, to issue such part of the notes as will not raise the total bonded debt of the county beyond the constitutional limit.

To this affirmative defense the plaintiff demurred on the ground of insufficiency, in that (1) the proposed issue of notes will be under the seal of the county and will extend over a period of six years, and as such are bonds of the county, and being such are void, as to issue the entire amount would greatly exceed the constitutional limit; and (2) the Act, properly construed, does not authorize the issuance of only such part of such bonds as will not exceed the limit.

The matter therefore comes before me on the issues thus made up by these pleadings.

As I see it, the real issue in the case is whether the notes whose issuance is sought to be enjoined represent a bonded debt in the constitutional sense. To declare that the notes authorized by the Act of April 1, 1925, are bonds is, in effect, to declare that Act unconstitutional as being in conflict with Section 5 of Article 10 of the Constitution.

But a case of this kind is no exception to the rule that Acts of the Legislature are not to be lightly set aside on constitutional grounds, and that before such can be done, the illegality of the Act assailed must clearly and indubitably appear. *Fripp v. Coburn,* 101 S. C., 312; 85 S. E., 774. *Poulnot v. Cantwell,* 129 S. C., 171; 123 S. E., 651.

It is well settled that the Legislature has the power to authorize a county to incur debts and to issue securities therefor, the only limitation being that the bonded debt shall not exceed 8 per cent. of the assessed value of the taxable property. *Carrison v. Kershaw County,* 83 S. C., 88; 64 S. E., 1018. *Burriss v. Brock,* 95 S. C., 104;

79 S. E., 193.  *Lillard v. Melton,* 103 S. C., 10; 87 S. E., 421.

Under the principles of these cases, the obligations incurred by the county may assume the form either of notes or of bonds, as the Legislature may designate.  In the instant case, the Legislature has authorized the issuance of obligations to be secured primarily by bridge tolls and highway reimbursements, the work performed with the funds derived from the notes being work specifically designated by statute as that of the State Highway Department, and for which the taxpayer is never to be liable unless the resources pledged fail, and has declared in express language that such obligations are notes.  This determination by the Legislature of the nature of the obligations it has authorized to be issued is entitled to great weight, and the Courts should not adopt a different view unless compelled to do so.

The fact that the obligations proposed to be issued by the defendants in the name of the county are to be under the seal of the county has no bearing on the question of whether they are to be considered notes or bonds.  Hence this may be dismissed without further consideration.  *Luther v. Wheeler,* 73 S. C., 83; 52 S. E., 874; 6 Ann. Cas., 754; 4 L. R. A. (N. S.), 746.  *Lillard v. Melton,* 103 S. C., 10; 87 S. E., 421.

It is perhaps unfortunate that the Constitution is not more explicit in defining the term "bonded debt," but be that as it may, I feel satisfied that whatever other elements may be necessary to make up a bonded debt, certainly one of the most essential is that it must be a primary obligation of the political subdivision involved, and secured primarily by a tax levied on the property holders therein.  From the facts pleaded in the affirmative defense and admitted by the demurrer, this essential element is wanting in these obligations.  They are to be payable in instalments of $75,000 in four, five, and six years from date, .

respectively, and they secure funds borrowed for the building of roads of the "state-wide connected system of public roads." The Act providing for the building of such roads expressly declares, in Section 1 thereof, that they "shall be constructed by the State of South Carolina, and ever maintained as state highways." It is true, Section 6 of the same Act permits a county to build any roads of such system, and to be reimbursed therefor by the State, but this in no way changes the fundamental purpose of the Act, which was to charge the State with the duty of constructing such roads, and to impose upon it the corresponding obligation of paying for them. The Act of April 1, 1925, makes explicit provision for two of the designated highways of the "Pay-as-You-Go Act," and authorizes the expenditure of $205,-000 thereon. As to these, it is too clear for argument that the county is only contingently liable, and, in fact, I am constrained to hold a taxpayer to the county can never be required to pay any part of such amount, as the State would be legally bound to discharge such obligations without permitting such action against taxpayers to the county.

Under the facts and the law, therefore, the proposed notes to the extent of $205,000 are nothing more than guarantees or other contingent obligations of the county; and in no sense do they constitute a bonded debt thereof. The case therefore falls squarely within the decision in *Lillard v. Melton,* 103 S. C., 10; 87 S. E., 421, and must be controlled by it.

While the additional $20,000 authorized to be issued is not to be used in the construction of a road already designated as a part of the state system, yet the demurrer admits that it is to become a part of such system. This being true, the notes representing it are governed by the same principles as apply to those to be issued for the two other roads. Aside from this, with the $205,000 out of the way, no question, under the facts presented, can be raised as to the validity of the $20,000 issue. I therefore hold them valid on both grounds.

Coming to the contention that the defendants have no authority to issue a portion of the notes authorized by the Act of April 1, 1925, it may be well to say that this contention entirely loses sight of the fact that the object of that Act was merely to provide a method of carrying into effect the provisions of the "Pay-as-You-Go Act," and that the two must be construed together. The Act of April 1, 1925, authorized the county to construct two of the roads specifically designated in the "Pay-as-You-Go Act." The latter Act specifically authorized the highway commission to enter into arrangements with the county authorities to construct any of the roads designated therein. Reading the two Acts together, I hold it would be perfectly competent for the defendants to make an arrangement to build any part of the roads specifically designated in the Act of April 1, 1925, and to issue notes as security for the funds borrowed for such purpose.

The amount of additional bonds the county can constitutionally issue is admitted to be, in round numbers, the sum of $150,000. It would appear from the allegations of Paragraph 7 of the affirmative defense herein, which are admitted by the demurrer, that the notes issued to build the Godfrey's ferry bridge, which are payable in one, two, and three years from date, respectively, are ordinary promissory notes of the county, and should therefore be excluded from any calculation of its bonded debt. This would leave $150,000 as the total amount of bonded indebtedness that the county could incur. Therefore, even if the notes authorized to be issued under the Act of April 1, 1925, are to be considered as bonds, the county clearly could issue them to the amount of $150,000 without exceeding the constitutional limit.

From what has been said, it necessarily follows that both grounds of the demurrer must be overruled. It is, therefore ordered, adjudged, and decreed, that the proposed issue of the whole, or of any part, of the notes by the defend-

ants in the name of the county of Florence, authorized by the Act of April 1, 1925, will not create a bonded debt of the county, that the demurrer to the affirmative defense be overruled, that the injunction prayed for be refused, and that the complaint be dismissed.

*Mr. Philip H. Arrowsmith,* for appellant.

*Messrs. Davis & Sharkey,* for respondents, cite: *Bonded indebtedness limited:* Const., 1895, Art. 10, Sec. 5. *Unconstitutionality must be clearly shown:* 101 S. C., 312; 85 S. E., 774; 123 S. E., 651. *Legislative will governs in absence of constitutional prohibition:* 83 S. C., 88; 64 S. E., 1018; 103 S. C., 10; 87 S. E., 421. *Cases distinguished:* 60 S. C., 532; 39 S. E., 265; 113 S. C., 407; 102 S. E., 755; 123 S. E., 651.

June 22, 1925.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES COTHRAN and MARION concur.

---

## 11759

### CALDWELL *ET AL.* v. *PULLMAN CO.*

(128 S. E., 504)

1. CARRIERS—PULLMAN COMPANY IS CHARGEABLE WITH THE SAME HIGH DEGREE OF ACCOUNTABILITY FOR WRONGFUL AND TORTIOUS ACTS OF ITS SERVANTS AS IS A COMMON CARRIER.—Pullman Company is chargeable with the same high degree of accountability for wrongful and tortious acts of its servants as is a common carrier.

2. CARRIERS—EVIDENCE HELD TO WARRANT INFERENCE OF NEGLIGENCE ON PART OF PULLMAN COMPANY.—Evidence, in action for injuries sustained by sleeping car passenger when she stumbled over suit case in aisle, *held* sufficient to warrant inference of negligence on part of defendant, Pullman Company.