774

## CITY OF GEORGETOWN v. ELLIOTT et al.

### No. 4267.

Circuit Court of Appeals, Fourth Circuit.

April 5, 1938.

Capers G. Barr, of Georgetown, S. C., and Robert McC. Figg, Jr., of Charleston, S. C., for appellant.

E. W. Mullins, of Columbia, S. C. (Nelson, Mullins & Grier, of Columbia, S. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a judgment for plaintiffs on a note for $8,000 issued by the City of Georgetown, S. C. The complaint alleges that the note was duly issued by the city and that the bank of which plaintiffs are receivers purchased it for value and in good faith before maturity and became a holder thereof in due course. The note, which is set forth in full in the complaint and contains a general promise to pay on the part of the city, is dated September 15, 1931, and recites that it was issued for money borrowed for corporate purposes in anticipation of municipal taxes for the current year, pursuant to section 7 of article 8 of the Constitution of South Carolina and section 4554 of the Code of Laws of South Carolina of 1922 (Civil Code). There is no allegation of collection of taxes for 1931 by the city or of their availability for the payment of the note; and both by demurrer and answer the point was made that it was not a general obligation of the city, but was payable only out of taxes for that year. Only one question is presented by the appeal, viz., whether such a note creates a valid indebtedness on the part of the city for which a general judgment may be rendered, in the absence of allegation and proof that taxes available for its payment have been collected from the levy of the year in which it was issued. We think that this question must be answered in the affirmative.

If the statute under which the note was issued be considered without reference to constitutional restrictions, there can be no question but that it authorizes the creation of a general obligation on the part of the city by the issuance of tax anticipation notes. The pertinent part of that statute, Civ.Code S.C. 1922, § 4554, is as follows: "That in the anticipation of the collection of taxes in any fiscal year said City or Town Council, whether such city or town be char-

tered by special Act of the General Assembly or under the general law, may from time to time, as occasion may require, borrow money for corporate purposes on its note or notes, and pledge the taxes levied, or to be levied, in said year for corporate purposes, for the payment of such note' or notes and the discount or interest thereon, and such note or notes it is hereby authorized to discount generally, if desired, without responsibility to the person or corporation advancing money on said security, to see to the application of the funds realized thereon."

And we do not think that any different conclusion is required when the limitations of the State Constitution are taken into account. Article 8, § 7, of that instrument, which is the one relied on, after limiting the bonded debt of municipalities to 8 per cent. of the assessed value of their taxable property and requiring an election as a prerequisite to the creation of such debt, contains the following proviso: "Provided, That this Section shall not be construed to prevent the issuing of certificates of indebtedness in anticipation of the collection of taxes for amounts actually· contained or to be contained in the taxes for the year when such certificates are issued and payable out of such taxes."

The city would have us construe this proviso as forbidding the issuance of any sort of obligation in anticipation of taxes except nonnegotiable certificates payable only out of tax collections for the year. This would be to read into the proviso language which it does not contain and to establish a limitation on municipal borrowing in anticipation of tax collections which, in our opinion, would be utterly unreasonable and which would result in making it practically impossible for municipalities in South Carolina to borrow money for carrying on the most necessary municipal activities pending the collection of their taxes. As was well said by the late Judge Ernest F. Cochran in Citizens & Southern National Bank of· Savannah v. The City of Florence (an unreported decision of the District Court for the Eastern District of South Carolina): "It is argued, however, that tax anticipation notes must be payable out of the taxes pledged, and if for any reason these taxes fail or are dissipated, the holder of the note can collect nothing from the city. I cannot accede to this proposition. The framers of the Constitution, when they permitted tax anticipation notes, must be deemed to have known something of the practical effect that such a construction of the law would have upon the credit of the city. The holders of these notes are not responsible for the action of the city authorities in taking the taxes which were pledged for the notes and using them for other corporate purposes. This the holders of the notes could not prevent, nor were they required to stand guard over the collections and insist as each collection came in on its being applied to their notes. That would be utterly impracticable. The city authorities are not their agents, but the agents of the people of Florence. They had a right to assume that the city officials would not unlawfully divert these pledged taxes. To hold that because the city officials have taken the pledged taxes and used them for othér corporate purposes, the city thereby escapes liability, would render these tax anticipation notes unsalable. No business man would lend money on such notes."

Article 8, § 7, of the Constitution was intended as a limitation upon the power of the municipality to create a debt by the issuance of bonds, not as a limitation upon the power to borrow money for short periods in anticipation of the collection of taxes; and it has been expressly held by the Supreme Court of South Carolina that obligations "secured by the pledge of a fund which might reasonably be expected to be sufficient to meet the obligations without resorting to the levy of a property tax did [do] not constitute bonded debt within the meaning of the constitutional limitations, notwithstanding that the full faith, credit, and taxing power of a political subdivision were pledged for the payment of the obligations." Briggs v. Greenville County, 137 S.C. 288, 305, 135 S.E. 153, 158. The pledge of taxes levied but not collected is clearly the pledge of a fund within the meaning of this rule. Sullivan v. City Council of Charleston, S.C., 130 S.E. 876.

The case last cited is directly in point here. In that case the city of Charleston proposed to issue certificates of indebtedness for past-due taxes and to guarantee the payment of such certificates. It was sought to enjoin their issuance on the ground that the law authorizing same was violative of the constitutional provision here under consideration. The court denied the injunction, citing as controlling authority on the question so raised the case of Barnwell v. Matthews, 132 S.C. 314, 128 S.E. 712, in which the court had upheld an act of the Legislature authoriz-

ing a county to borrow $225,000 for the purpose of building roads to be secured primarily by "bridge tolls and highway reimbursements," even though the general credit of the county had been pledged for the payment of the obligations issued.

To like effect is State v. Moorer, 152 S.C. 455, 150 S.E. 269, which dealt with article 10, § 11, containing a similar limitation upon the state debt, and held the limitation not applicable to a debt for which the credit of the state had been pledged but which had been secured by a pledge of revenues to be derived from certain taxes. In the course of the opinion the court said, 152 S.C. 450, 150 S.E. 269, at page 282:

"But whatever doubt may be thought as to the holding of this court with respect to provisions relating to the creation of a state debt, there is no uncertainty as to the tenor of its decisions dealing with constitutional restrictions upon the creation of a 'bonded indebtedness' of political subdivisions. The leading decisions of this class are the Evans [Evans v. Beattie, 137 S.C. 496, 135 S.E. 538] and Briggs Cases, supra, the opinion in the former being filed October 15, 1926, and the opinion in the latter three days later. The court discussed at great length in these cases, and in language almost the same in both, the meaning and effect of the constitutional restrictions on the creation of indebtedness of political subdivisions. * * *

"On the question here involved, Mr. Justice Cothran wrote learnedly and elaborately, as follows:

"'This court has held a number of times that obligations of the same character as these bonds, secured by the pledge of a fund which might reasonably be expected to be sufficient to meet the obligations without resorting to the levy of a property tax, did not constitute 'bonded debt within the meaning of the constitutional limitations, notwithstanding that the full faith, credit, and taxing power of a political subdivision were pledged for the payment of the obligations. Lillard v. Melton, 103 S.C. 10, 87 S.E. 421; Brownlee v. Brock, 107 S.C. 230, 92 S.E. 477; McIntyre v. Rogers, 123 S.C. 334, 116 S.E. 277; Barnwell v. Matthews, 132 S.C. 314, 128 S.E. 712; Sullivan v. City Council of Charleston, 133 S.C. 189, 133 S.E. 340. In each of these cases the obligations passed upon undoubtedly constituted a debt, in the technical and legal sense of that term, of a political subdivision a debt payable in future years, evidenced by instruments designated as bonds or having all of the characteristics of bonds. In all but one of the cases the obligations were designated, "certificates of indebtedness," rather than "bonds," but the decisions were not placed upon the ground that a certificate of indebtedness is not a bond. Indeed, in the recent case of Sullivan v. City Council of Charleston, 133 S.C. 156, 130 S.E. [872] 873 (decided on the same day as the case with the same title cited above), it was held that notes which were bonds in everything but name should be deemed to be bonds within the meaning of the constitutional limitations. See, also, [Board of Com'rs of City and County of] Denver v. Home Savings Bank, 236 U.S. 101, 35 S. Ct. 265, 59 L.Ed. 485.

"'In one of the cases (Lillard v. Melton) the obligations were secured by the income of a canal company. In three of the cases (Lillard v. Melton, Brownlee v. Brock, and McIntyre v. Rogers) the obligations were secured by special assessments levied upon property benefited by street improvements and payable in annual installments. In one case (Sullivan v. City Council of Charleston) the obligations were secured by past-due and unpaid taxes. In another case (Barnwell v. Matthews) they were secured, as in the present case, by a reimbursement agreement made pursuant to the "Pay-As-You-Go Act." In reliance upon the decisions in these five cases, millions of dollars of county and city obligations have been issued and are now outstanding.'"

The city relies upon Duncan v. City of Charleston, 60 S.C. 532, 39 S.E. 265; Bolton v. Wharton, 163 S.C. 242, 161 S.E. 454, 86 A.L.R. 1101, and Tarver v. Town of Johnston, 173 S.C. 333, 175 S.E. 821, 822; but none of these decisions is in point. The Duncan Case involved a contract on the part of the city to pay $42,000 of each year's taxes for a period of fifty years; this being held the creation of a bonded indebtedness within the meaning of the constitutional provision. The pledge contained in the contract was not a pledge of current taxes or of taxes already levied, but of future taxes; and its effect necessarily was to increase for future years the burden upon the tax-payers under the general taxing power of the city. The instruments involved in Bolton v. Wharton, supra, were not tax anticipation notes at all, and did not purport to be. They were

not even notes executed for a proper corporate purpose but in payment of a subscription to a private enterprise. In Tarver v. Town of Johnston, supra, recovery was denied because the note sued on was held to be not a tax anticipation note, but in the nature of a bonded debt. It was given, not for a current expense, but for a past-due indebtedness, and the bank which took it advanced no money at the time of its execution. There are dicta in both of the cases last cited which support the position of the defendant, but we think that they are out of harmony with the decisions in which the point was directly decided, and which we are bound to follow. In this connection, however, it is not amiss to note the following dictum in the case last cited which is in harmony with the rule established by the decisions as we understand it, viz.: "If the obligation of the town, which is the subject of the suit herein, be considered a note for corporate purposes given in anticipation of the collection of taxes in the fiscal or current year, then judgment should be for the plaintiff."

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.