DAVID SHOLTZ, Governor, *et al.,* v. GUYTE P. McCORD.

150 So. 234.
Opinion Filed October 5, 1933.

*Cary D. Landis,* Attorney General, *H. E. Carter* and *Robert J. Pleus,* Assistants, for the State.

*Guyte P. McCord* and *F. P. Fleming,* for Appellee.

WHITFIELD, J.—In a bill of complaint brought by a citizen and resident taxpayer of the State, it is in effect alleged that the Board of Commissioners of State Institutions, consisting of the Governor and six administrative officers of the Executive Department contemplate and assert that they intend to procure from the United States under the "National Industrial Recovery Act" of Congress "a grant, loan and/ or advance of money for the purpose of erecting" stated buildings at the Florida State Hospital for the Insane, and at the Florida State Prison; the amount being $500,000.00, 30 per cent of the amount "to be an outright grant from the United States," that "for the purpose of securing the repayment of the balance of 70 per cent of the said $500,000.00 or the sum of $350,000.00, the said Board of Commissioners of State Institutions * * * are now preparing to either lease or deed outright to the United States Government, or its Emergency Administration, or other proper representatives thereof, the land upon which the proposed projects will be erected; and following which, said Board of

Commissioners of State Institutions are preparing to enter into a lease agreement wherein and whereby they will agree to pay to the United States Government, or its Emergency Administration; or other proper representatives thereof, a sum of money monthly or annually over a period of years until said sum of $350,000.00, together with interest approximating 4 per cent per annum thereon shall have been paid; said period not to exceed thirty years in duration; "that the transaction so contemplated as aforesaid is' pursuant to Section 203 (a) (3) of said National Industrial Recovery Act, and upon completion of the amortized payments as provided in said contemplated agreement, and without further cost, the said Board of Commissioners of State Institutions could procure a conveyance of the projects involved at their option."

It is alleged that the contemplated transaction is illegal and violates Sections 2, 4, and 6 of Article IX of the State Constitution; and that it will increase complainant's' taxes and cause him irreparable damage. It is prayed that the Board be enjoined from doing anything about the execution of any papers, contracts, leases or other documents "concerning or in any manner pertaining 'to the securing of money, directly or indirectly wherewith to construct" a building or other project at either of said institutions'.

By answer and motion to dismiss the bill of complaint, the defendant members of the Board admit a purpose to take contemplated action as alleged, and deny its illegality and irreparable damage to the complainant. The defendants aver "that the transaction contemplated by them is in compliance with the terms' of the National Industrial Recovery Act as cited in the bill of complaint, and allege that the Section thereof under which they are proceeding, was specifically placed in said Act for the purpose of being used

by States or political subdivisions thereof which were forbidden to create a debt and issue bonds as evidence thereof, or which had exceeded their debt limitation; and that a covenant in a lease to pay rent is in no sense a debt nor is a lease containing such covenant in any manner an evidence of indebtedness or a bond; and therefore, the contemplated transaction in no manner violates any provision of the Constitution of Florida, but on the other hand is in full compliance and accord with the letter and spirit thereof. * * * that by Chapter 15858, Acts of 1933, a due legal and proper appropriation was made for Florida State Hospital in the sum of $511,333.75, to cover necessary and regular expense and $58,194 to cover incidentals, and that a due, legal and proper appropriation was made for the State Prison Farm in the sum of $254,421 for necessary and regular expense, and the sum of $10,000 for a new female ward. And these defendants allege that each of said sums is an annual appropriation, and the said Chapter covered the biennium period from July 1, 1933, to July 1, 1935. And these defendants allege that the contemplated rental payments under the terms of the contemplated transaction will together with all other necessary and/or regular and/or incidental expenses of said institution, be well within the said appropriation as fixed by law; * * * that there is dire and immediate need for the proposed projects at the State Institutions involved for the proper and efficient management thereof, and these defendants are under a duty to provide therefor, and that the contemplated transaction has in mind providing the said projects for the use and benefit of the State at a minimum cost to the State and without the creation of a debt or laibility therefor, or the issuance of any bond or other similar evidence of indebtedness to secure the same."

The grounds of the motion (embraced in the answer) to dismiss the bill of complaint are:

"(a) That the said bill of complaint is without equity, and shows upon its face that it contains no ground for equitable relief against these defendants.

"(b) That said bill of complaint shows upon its face that the contemplated transaction is valid, legal and constitutional, and in no manner violates the constitutional rights of the plaintiff or any other citizen or taxpayer of Florida.

"(c) That said bill of complaint shows upon its face that the contemplated transaction is not the creation of a debt, and the issuance of a bond or other similar evidence thereof, but that the said transaction involves a lease by the defendants' containing a covenant to pay rent, which does not constitute a debt, or amount to the issuance of a bond or other evidence of such debt."

The Court upon consideration of the bill, answer and motion to dismiss, granted an injunction and denied the motion to dismiss the bill of complaint. Defendants' appealed.

The answer admits the allegations of a purpose by the Board to procure "a grant, loan and/or advance of money" to the amount and for the purpose stated, and that the Board "will agree to pay * * * a sum of money monthly or annually over a period of years until said sum of $350,000 together with interest approximating 4 per cent per annum thereon shall have been paid; said period not to exceed thirty years in duration."

The answer avers "that there is dire and immediate need for the proposed projects at the State Institution" and "that the contemplated rental payments under the terms of the contemplated transaction will, together with all other

necessary and regular or incidental expenses of said institutions, be within the appropriation as fixed by law" for the two years from July 1, 1933.

So there is a showing of "dire and immediate need" for the contemplated buildings at the State Institutions, and of a commendable desire of the Board to provide for the safety of the inmates of such Institutions. There is also an averment that the proposed "rental payments" may be made from legislative appropriations for necessary and regular expenses that may be made biennially.

But there appears to be no general or special authority of law for the transaction as it is stated in the pleadings. It appears that the Board of Commissioners of State Institutions propose to procure "a grant, loan or advance money" from the United States, and to agree to pay to the United States from State funds a sum of money monthly or annually over a period not exceeding thirty years, until the sum to be repaid with annual interest thereon, shall have been paid.

Such a transaction and agreement made by a State Board for a State purpose would in effect be an attempt to create a binding, continuing interest-bearing contract obligation of the State to pay money in the future, that would violate the intent and provision of Section 6, Article IX, of the Constitution, that "the Legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection." See State *ex rel.* v. Green, 95 Fla. 117, 116 So. 66; *In re.* Advisory Opinion to the Governor, 94 Fla. 967, 114 So. 850. See also Cheney v. Jones, 14 Fla. 587, 611; 15 Fla. 455. Such a transaction does not merely provide for facilities to be furnished to the State to be paid for when furnished, as in Hathaway v. Munroe, 97 Fla. 28, 119 So. 149.

It would not be proper to discuss on this record whether the Board of Commissioners of State Institutions may, under the general authority conferred upon such Board by the Constitution and statutes of the State, "either lease or deed outright" to the United States or to any one, a portion of the lands belonging to the State that are held or used for State purposes, upon which leased or deeded lands the grantee or lessee may construct buildings suitable and needed for State purposes, such buildings to be then rented to the State and used for State purposes, for which use and occupation payments may be made from State funds as the buildings are used for State purposes. No such case is presented.

In this case the Board proposes to "agree to pay to the United States Government * * * a sum of money monthly or annually over a period of years until the sum of $350,000, together with interest, * * * shall have been paid," which would render the transaction invalid under Section 6, Article IX, of the Constitution, even if the lease or conveyance is authorized by law and the lands and the improvements placed thereon by the lessee or grantee would revert to the State when the payments are all made. It is an agreement to pay in the future State funds for money that is borrowed, not an agreement to pay for property or facilities from State funds as and when furnished, that conflicts with the intent of the first clause of Section 6, Article IX of the Constitution, as that organic provision has been interpreted by this Court.

The "National Industrial Recovery Act" of Congress, referred to in the pleadings, contains enactments, among others, that "a national emergency productive of widespread unemployment and disorganization of industry, which burdens interstate and foreign commerce, affects the public

welfare, and undermines the standards of living of the American people, is hereby declared to exist * * *."

. "The President is authorized and empowered * * * (1) to construct, finance or aid in the construction or financing of any public works project included in the program prepared pursuant to Section 202; (2) upon such terms as the President shall prescribe, to make grants to States, municipalities, or other public bodies for the construction, repair or improvement of any such project, but no such grant shall be in excess of 30 per centum of the cost of the labor and materials employed upon such project; (3) to acquire by purchase, or by the exercise of the power of eminent domain, any real or personal property in connection with the construction of any such project, and to sell any security acquired or any property so constructed or acquired, or to lease any such property with or without the privilege of purchase." * * * "The President, in his discretion, and under such terms as he may prescribe, may extend any of the benefits of this title to any State, county, or municipality notwithstanding any constitutional or legal restriction or limitation on the right or power of such State, county or municipality to borrow money or incur indebtedness."

Apparently in response to Federal legislation, Chapter 15861, Laws of Florida, approved June 7, 1933, was enacted. This statute is referred to in the brief of counsel for the Board as having a possible bearing upon the authority of the Board to take the action here challenged. But a consideration of Chapter 15861 discloses a legislative intent that whatever authority may be exercised under the statute in contemplated transactions between the Federal and State sovereignties that may be permissible under the Constitution of the State, such authority on the part of the

State shall be exercised by the State Commission created by the Act, of which the Governor of the State is a member.

Whatever may be the authority, if any, of the Commission created by Chapter 15861 to receive loans or grants of money from the Federal sovereign to be used for purposes of the State, and to make agreements in relation thereto, such authority is not involved in this case. Chapter 15861 expressly provides that:

"Under no circumstances shall any bond, note or other evidence of indebtedness issued under this Act or any other indebtedness created by the Commission be construed as an obligation of the State of Florida, nor shall the State under any theory be bound therefor."

It would be inappropriate to discuss here the authority conferred upon the "Florida Agricultural and Industrial Relief Commission," of which the Governor is a member, by Chapter 15861, Acts of 1933, to secure "from the Federal Government loans or grants of money * * * for objects and purposes designated or approved by Congress;" and to make and receive contracts, conveyances, leases, etc., to aid and assist "boards and commissions in this State" in carrying out the purposes of the Act. That matter is not presented for determination in this case. Section 12 of Chapter 15861, is as follows:

"It is intended that the provisions of this Act shall be liberally construed for accomplishing the work authorized and provided, or intended to be provided for by this Act, and where strict construction would result in defeat of the accomplishment in any of the purposes of this Act, and the liberal construction would permit or assist in the accomplishment thereof, the liberal construction shall be chosen."

. Affirmed.

. DAVIS, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.