John T. Herbert v. Ben D. Thursby, et al., Constituting Board County Commissioners, Volusia County.

151 So. 385.
Opinion Filed November 20, 1933.
Rehearing Denied December 20, 1933.

H. E. Couchman and Leon J. C. Harton, for Appellant; W. J. Gardiner, for Appellees.

Whitfield, J.—In a bill of complaint brought by a citizen tax payer of Volusia County, Florida, it is in effect alleged that the county commissioners of the county, in order to secure an armory for appropriate use in the county, propose to borrow from the authorities of the United States government $52,500.00 to be used in providing such armory;

"That the County of Volusia now owns and has owned for many years last past the following described property located in Volusia County, Florida, to-wit: The West Seventy-five (75) feet of Lot One (1), Block Nine (9), according to Hodgman's Map of Daytona, of record in the Public Records of Volusia County, Florida.

"That the said property is now vacant and unused property, but was until about seven years since used as and for an Armory site; that officers and members of Battery C,

265th Coast Artillery, Florida National Guard, are now attempting to have the City of Daytona Beach, a municipal corporation of the State of Florida, convey to Volusia County and/or to the United States of America a fraction or portion of the City Island for a site for the construction of said Armory. That the City Island is an island located in the Halifax River, a river that divides the said City of Daytona Beach, and is owned by the said City of Daytona Beach; that if the said portion or fraction of the said City Island is conveyed by the said City of Daytona Beach to the County of Volusia, then your Plaintiff believes and so alleges that the said County of Volusia will convey the same to the Federal Emergency Administration of Public Works and/or the United States of America for the purpose herein alleged; that the members of the City Commission of the said City of Daytona Beach are now favorably considering the request of the said officers and members of said Battery C, 265th Coast Artillery, Florida National Guard, to convey a fraction or portion of the said City Island either to the said County of Volusia or to the Federal Emergency Administration of Public Works and/or the United States of America for the purposes herein alleged; that the Board of County Commissioners of Volusia County, Florida, intended and will evidence said loan, if granted, by a note or indenture of indebtedness obligating Volusia County to repay said sum of Fifty-two Thousand Five Hundred ($52,500.00) Dollars to the Federal Emergency Administration of Public Works and/or the United States of America with interest thereon at the rate of four per cent per annum until paid, or in lieu thereof deed to the Federal Emergency Administration of Public Works and/or the United States of America the said West Seventy-five (75) feet of Lot One (1), Block Nine (9), according to Hodg-

man's Map of Daytona, of record in the Public Records of Volusia County, Florida, or said fraction or portion of the said City Island as and for an armory site for the construction of said Armory by the said Federal Emergency Administration of Public Works and/or the United States of America. That if the said West Seventy-five (75) feet of Lot One (1), Block Nine (9), according to Hodgman's Map of Daytona, of record in the Public Records of Volusia County, Florida, and/or the said fraction or portion of the said City Island is conveyed to the Federal Emergency Administration of Public Works and/or the United States of America and an Armory constructed thereon in accordance with the terms and provisions of said application, then and in that event said Volusia County by and through its Board of County Commissioners will lease from the Federal Emergency Administration of Public Works and/or the United States of America such Armory and land upon which it is constructed as and for an Armory for the said Battery C, 265th Coast Artillery, Florida National Guard. That the said lease would have to be executed and the terms and provisions thereof be in accordance with the terms and provisions of the said National Industrial Recovery Act, and would provide for a rental to be paid for such Armory by the County of Volusia to the said Federal Emergency Administration of Public Works and/or the United States of America over a period of not more than thirty years. That the said rental for the said Armory would be paid in monthly or annual installments until said total sum of Fifty-two Thousand Five Hundred ($52,500.00) Dollars was paid when the said Federal Emergency Administration of Public Works and/or the United States of America would convey the said Armory and the land upon which it was constructed to the County of Volusia without any

further payment of money or consideration. That the Board of County Commissioners of Volusia County, Florida, will either loan or borrow the said sum of Fifty-two Thousand Five Hundred ($52,500.00) Dollars from the Federal Emergency Administration of Public Works and/or the United States of America and evidence said loan by the execution and delivery of note and/or other evidence of indebtedness, or in lieu thereof convey the said West Seventy-five (75) feet of Lot One (1), Block Nine (9), according to Hodgman's Map of Daytona of record in the Public Records of Volusia County, Florida, or the said fraction or portion of the said City Island to the Federal Emergency Administration of Public Works and/or the United States of America and then enter into an indenture of lease providing for the leasing of either of said pieces of property after the construction of the said Armory thereon and agreeing to pay therefor an annual rental over a period of years, the total rental to be the sum of Fifty-two Thousand Five Hundred ($52,500.00) Dollars, plus interest at the rate of four per cent per annum; that the action of the said Board of County Commissioners of Volusia County, Florida, as herein alleged is to be taken and had pursuant to the said National Industrial Recovery Act, and that the said Board of County Commissioners of Volusia County, Florida, will execute and deliver any and all necessary deeds and/or leases and/or indentures necessary and requisite to secure the said sum of Fifty-two Thousand Five Hundred ($52,500.00) Dollars with which to construct the said Armory building, unless enjoined and restrained from so doing by this Court; that the said proposed acts of the Board of County Commissioners of Volusia County, Florida, whereby the said Board of County Commissioners of Volusia County, Florida, propose to

obligate Volusia County to pay the said sum of Fifty-two Thousand Five Hundred ($52,500.00) Dollars by note or indenture of indebtedness and/or by leasing such Armory from the Federal Emergency Administration of Public Works and/or the United States of America, are without authority at law and would be void and unconstitutional."

An injunction was prayed for.

By motion to dismiss, the essential allegations of the bill of complaint are in effect admitted.

The court denied an injunction and dismissed the bill of complaint. An appeal was taken by the complainant.

Section 6, Article IX, of the Constitution as amended in 1930 is as follows:

"The Legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection, and the Counties, Districts or Municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors' residing in such Counties, Districts, or Municipalities shall participate, to be held in the manner to be prescribed by law; but the provisions of this Act shall not apply to refunding bonds issued exclusively for the purpose of refunding of the bonds or the interest thereon of such Counties, Districts, or Municipalities."

See also State v. City of Miami, 100 Fla. 1388, 131 So. 143.

To evidence a loan of a large sum of money to the county "by a note or indenture of indebtedness obligating Volusia County to repay said sum" with interest extending over a long period of years, would in effect be an attempt to create a binding, continuing, interest-bearing contract obligation of

the county to pay money in the future, that would violate the intent of the provision of Section 6, Article IX, of the Constitution as amended in 1930, that counties shall have power to issue bonds other than refunding bonds "only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such counties." See Sholtz, Governor, v. McCloud, decided October 5, 1933; State, *ex rel*. v. Governor, 95 Fla. 117, 116 So. 66; In re: Advisory Opinion to the Governor, 94 Fla. 867, 114 So. 850; Cheney v. Jones, 14 Fla. 587, 611.

Even if the county commissioners have authority to convey county property or other property to the United States or its constituted authorities, on which an armory may be constructed which the county may lease for use as an armory during a long term of years until the armory is paid for by the rentals when it will be conveyed to the county, Chapter 15861, Acts of 1933, appears to have been enacted for the purpose of securing loans from the United States under the emergency Acts of Congress, if needed for proper public improvements by counties and other subdivisions and municipalities of the State.

Reversed.

DAVIS, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.

DAVIS, C. J. (concurring).—I fully concur in the opinion as written, but add the following additional views in the hope that the subject here dealt with may be more fully elucidated in certain aspects not touched upon by Mr. Justice WHITFIELD.

Section 2054, C. G. L. (Chap. 12089, Acts of 1927), authorizes municipalities to construct armories upon State-owned land which may be made available for that purpose

by the State Armory Board. That section also authorizes counties and municipalities to make donations or contributions for purposes of armory facilities for National Guard military units, including donations of land and contributions of money therefor. Paragraph (h) particularly authorizes armories to be acquired by counties and municipalities on long-term leases to be turned over for use of military units under the supervision of the State Armory Board. There is consequently ample statutory authority for a county to enter into a long-term lease for an armory and to turn the leased armory over to the armory board for military purposes.

There appears to be nothing unlawful in the act of the County Commissioners of Volusia County in entering into a long-term lease for an armory and in agreeing to pay a reasonable annual rental therefor, but any such lease must contemplate an actual *subject matter* upon which it can operate at the time of its execution, and the payment of the agreed rent must be for the facility as used, although the contemplated use may be provided to extend over a future period of years.

The substance of the holding in this case, and in the companion case of Sholtz v. McCord, 112 Fla. 248, 150 Sou. Rep. 234 (opinion filed October 5, 1933), is to the effect that neither the State, nor any county, district nor municipality therein, can by any sort of contractual device, pledge its credit to the Federal Government or any one else as a consideration for the loan or advance of money, under the guise of a lease of property, or other agreement, under the terms of which the principal and interest of the loan is to be paid back in the form of rent, or other installment charges, accruing and agreed to be paid over a period of years.

. It seems clear that whatever money is borrowed from the Federal Government for the execution of a State public works program as proposed to be financed by Congress, must be procured on the credit of the Florida Agricultural and Industrial Relief Commission created by Chapter 15861, Acts of 1933, and not on the credit of the State of Florida. Nor can money be borrowed upon the credit of any of the counties, districts or municipalities of this State, unless the obligation is first approved by a majority vote of the tax paying freeholders as provided in the 1928 constitutional amendment.

However, after the money is first procured *solely* on the credit of the Florida Agricultural and Industrial Relief Commission, which commission is authorized to issue its own bonds or other evidences of indebtedness which "on any theory" bind the State of Florida therefor, that commission is then authorized to enter into contracts and engagements with other State boards and with counties, districts and municipalities for the practical utilization of the funds procured by it, by arranging for the construction of facilities and itself leasing them to those State agencies and boards, and to counties, municipalities and districts which may require same for their use. And such Commission may then exact in return *for the use thereof* such rentals as the Commission may deem necessary to be collected to enable it to meet its own obligations to the Federal Government, as and when they severally become due.

Whether the Federal Government will lend any money to the Florida Agricultural and Industrial Relief Commission on such simple evidences of debt as it alone is able to give in the first instance, is a practical objection which may defeat the operation of the plan as Congress and the Legislature intended it to operate, but the courts must deal with

legislation as it is written. The President of the United States may obviate the difficulty by extending the Commission an initial grant to enable it to erect and furnish facilities in order to procure assets in the form of leases, etc., to be put up as collateral for further loans and thereby amplify the practical utility of the Commission.

Section 9 of Chapter 15861, Acts of 1933, providing that municipalities, counties, districts, etc., shall have the right to make applications for loans directly to the Federal Government independent of the Florida Agricultural and Industrial Relief Commission, has reference to self-liquidating revenue projects and those projects as to which the county, municipality or district affected is lawfully authorized to directly pledge its credit for the loan applied for, and does not create in any of the political subdivisions, municipalities or districts referred to any power to dispense with the constitutional restriction against their incurring long-term, interest-bearing debts in any form, without the approving vote of a majority of the taxpaying freeholders thereof. All other propositions must go through the Florida Agricultural and Industrial Relief Commission which must itself first procure the funds for a contemplated project, construct or arrange the construction of the project, and turn it over to the political subdivision, municipality or district on such terms and conditions as to lease or purchase as it may see fit to impose, and which the former may see fit to accept and agree to carry out.