THE STATE OF FLORIDA, *ex rel.* FRED H. DAVIS, ATTORNEY GENERAL OF THE STATE OF FLORIDA, *Relator,* v. E. P. GREEN, J. H. BAYLISS AND I. E. SCHILLING, AS MEMBERS OF AND CONSTITUTING THE CONNER'S HIGHWAY COMMISSION, *Respondents.*

THE STATE OF FLORIDA, *ex rel.* FRED H. DAVIS, ATTORNEY GENERAL OF THE STATE OF FLORIDA, *Relator,* v. F. E. LAWRENCE AND J. L. CRESAP, AS MEMBERS OF THE BOARD OF ENGINEERS OF THE CONNER'S HIGHWAY COMMISSION, *Respondents.*

ERNEST AMOS, AS COMPTROLLER OF THE STATE OF FLORIDA, CONNER'S FLORIDA HIGHWAY, INC., A CORPORATION, *Appellants,* v. Y. L. WATSON, *Appellee.*

En Banc.

Opinion Filed February 8, 1928.

118

*John T. G. Crawford* and *Philip S. May,* for Relator;
*J. Turner Butler, L. W. Jennings* and *Rufus Robbins,* for
Respondent, and *Y. L. Watson* and *H. M. Taylor,* as *amicus
curae* in the *quo warranto* cases.

*Giles J. Patterson* and *Fred H. Davis,* Attorney General,
for Appellants, and *Y. L. Watson* and *H. M. Taylor,* for
Appellee, in the injunction case.

WHITFIELD, J.—In the two cases first above stated, *quo
warranto* proceedings were brought by the Attorney General of the State, the purpose being to test the validity of Chapter 11905, Acts of 1927.

For the same purpose an injunction was sought in the circuit court in the third case by a citizen tax payer of the

State, to restrain the State Comptroller from drawing warrants upon the State Treasurer under the provisions of Chapter 11905, Acts of 1927. Motions to quash and demurrers were filed in the *quo warranto* cases, and an appeal was taken from a temporary injunction granted by the circuit judge in the third case.

The statute is as follows:

## "CHAPTER 11905—(No. 100).

"AN ACT to provide for the purchase by the State of Florida, of that Certain Privately Owned Toll Highway Extending from Parrott Avenue in Okeechobee County in a Southeasterly Direction Along the Shores of Lake Okeechobee to Canal Point in Palm Beach County, Commonly Called "Conner's Highway," in the State of Florida; and to provide for the appointment of a Commission to Negotiate for the Purchase of said Highway; and to Make Appropriations for the Payment of Said Conner's Highway, in the Event Same is Purchased by the State of Florida.

*Be It Enacted by the Legislature of the State of Florida:*

"Section 1. That there be and is hereby created a Commission of three persons to be known as the Conner's Highway Commission. The personnel of said Commission, all of whom shall be members of the State Road Department, shall be appointed, within fifteen days after this Act becomes a law, by the Governor of the State of Florida.

"Sec. 2. That said Commission shall negotiate for the purchase, by the State of Florida, for the free use of the public, of that certain privately owned toll highway extending from Parrott Avenue in Okeechobee County, Florida, in a southeasterly direction along the shores of Lake

Okeechobee to Canal Point in Palm Beach County, Florida, and thence along the Palm Beach Canal to Twenty Mile Bend in Palm Beach County, commonly called the. "Conner's Highway," at the price the Board of Engineers, hereinafter provided for, shall certify, as hereinafter provided, that it would cost the State of Florida to reproduce said highway at prevailing prices as now constructed, giving due consideration to the present condition of said highway.

"Sec. 3. That within thirty days after this Act becomes a law, the State Road Department shall designate one engineer, the owner or owners of said Conner's Highway shall designate one engineer and the Governor of the State of Florida shall designate a third engineer, the said three engineers so designated shall be known as a Board of Engineers for the purposes of this Act; and, within sixty days after the designation of all of said engineers of said Board of Engineers, said Board shall make a survey and examination of said Conner's Highway and prepare and file with the State Road Department of the State of Florida, and with said Conner's Highway Commission, and with the Comptroller of the State of Florida, verified triplicate detailed statements, certifying, in their judgment, an estimate of what it would cost the State of Florida to reproduce, at prevailing prices, said highway as now constructed, giving due consideration to the present condition of said highway. If said engineers shall fail to agree in this respect, the agreement of any two of said engineers shall, for the purpose of this Act, be considered the report of said Board of Engineers.

"Sec. 4. That said Commission shall, in the name of the State of Florida, within sixty days after said Board of Engineers has reported its estimate as provided in the preceding section, offer, on the terms as set forth in the follow-

ing section, to the owner or owners of said Conner's High-
way for said highway the sum so fixed and reported by said
Board of Engineers as the estimate of what it would cost
the State of Florida to reproduce, at prevailing prices, said
highway as now constructed, but said Commission shall in
no event offer a greater sum for said highway than the sum
so fixed by said Board of Engineers; and in the event the
owner or owners of said highway shall accept said offer
of said Commission, said Commission shall immediately
make report thereof to the State Road Department of the
State of Florida, and to the Comptroller of the State of
Florida, stating the amount agreed on; and thereupon said
Comptroller, as payment for said highway, shall, upon
proper transfer of said highway to the State of Florida by
good and sufficient deed to be approved by the Attorney
General of the State, draw and deliver to the proper party
or parties his warrant, payable to the proper party or
parties and his, its, or their assigns, against any funds in
the State Treasury set aside for the use of the State Road
Department, or its successor, in constructing roads and
highways in the State of Florida, for One Hundred Thou-
sand Dollars, on said purchase price; and on the first day
of February, 1928, said Comproller shall draw and deliver
to the proper party or parties a second warrant on said
purchase price, against said fund above mentioned, payable
to the proper party or parties and his, its, or their assigns,
for One Hundred Thousand Dollars, plus interest on said
sum at not to exceed five per centum per annum from the
date of said first warrant; and on the first day of Febru-
ary, 1929, said Comptroller shall draw and deliver to the
proper party or parties a third warrant on said purchase
price, against said fund above mentioned, payable to the
proper party or parties, and his, its, or their assigns for
Three Hundred Thousand Dollars, plus interest on said

sum at not to exceed five per centum per annum from the date of said first warrant issued hereunder to the date of said third warrant; and on the first day of February, 1930, said Comptroller shall draw and deliver to the proper party or parties a fourth warrant on said purchase price, against said fund above mentioned, payable to the proper party or parties, and his, its, or their assigns, for one-third of the whole sum then remaining unpaid on the purchase price of said highway, plus interest on said sum at not to exceed five per centum per annum from the date of said first warrant issued hereunder to the date of said fourth warrant; and on the first day of February, 1931, said Comptroller shall draw and deliver to the proper party or parties a fifth warrant on said purchase price, against said fund above mentioned payable to the proper party or parties, and his, its, or their assigns for one-half of the whole sum then remaining unpaid on the purchase price of said highway plus interest on said sum at not to exceed five per centum per annum from the date of said first warrant issued hereunder to the date of said fifth warrant; and on the first day of February, 1932, said Comptroller shall draw and deliver to the proper party or parties, a sixth warrant, against said fund above mentioned, payable to the proper party or parties, and his, its, or their assigns, for the remainder unpaid on the purchase price of said highway plus interest on said sum at not to exceed five per centum per annum from the date of said first warrant issued hereunder to the date of said sixth and last warrant; and the Treasurer of the State of Florida shall pay said warrants, each and every, when issued, as hereinbefore provided, out of any funds in the State Treasury set aside for the use of the State Road Department, or its successor, for the construction or maintenance of roads and highways in the State of Florida; and a sum of money sufficient to pay

said first named warrant, above mentioned, be and is hereby appropriated out of any funds now or hereafter in the State Treasury set aside during the year of 1927, for the use of the State Road Department, or its successors, for the construction or maintenance of roads and highways in the State of Florida; and asum of money sufficient to pay said second named warrant, above mentioned, be and is hereby appropriated out of any funds in the State Treasury, set aside during the year of 1928 for the use of the State Road Department, or it successor, for the construction or maintenance of roads and highways in the State of Florida; and a sum of money sufficient to pay said third named warrant, above mentioned, be and is hereby appropriated out of any funds in the State Treasury set aside during the year of 1929 for the use of the State Road Department, or its successor, for the construction or maintenance of roads and highways in the State of Florida; and a sum of money sufficient to pay said fourth named warrant, above mentioned, be and is hereby appropriated out of any funds in the State Treasury set aside during the year of 1930 for the use of the State Road Department, or its successor, for the construction or maintenance of roads and highways in the State of Florida; and a sum of money sufficient to pay said fifth named warrant, above mentioned, be and is hereby appropriated out of any funds in the State Treasury set aside during the year of 1931 for the use of the State Road Department, or it successor, for the construction of or maintenance of roads and highways in the State of Florida; and a sum of money sufficient to pay said sixth named warrant, above mentioned, be and is hereby appropriated out of any funds in the State Treasury set aside during the year of 1932, for the use of the State Road De-

partment, or its successor, for the construction or maintenance of roads and highways in the State of Florida.

"Sec. 5. That any sum or sums of money to become due for the purchase of said highway by the State of Florida to owners of said highway at the time of the transfer of said property to the State of Florida may be assigned to any person, firm or corporation by instrument in writing duly signed, sealed and acknowledged by the party or parties entitled to the funds hereby appropriated for the purchase of said "Conner's Highway"; and upon proper instrument of assignment being filed with the Comptroller of the State of Florida and approved by the Attorney General of the State of Florida, said Comptroller is hereby authorized and empowered to make said warrants, or any one of them, payable to the assignee thereof and deliver such warrant or warrants so assigned to said assignee instead of to the party or parties from whom the State of Florida purchased said highway, and, in such event, the amount of said warrant or warrants, shall be paid to such assignees in the same manner and at the same times as would otherwise be payable to the party or parties to whom originally payable.

"Sec. 6. That in the event said Conner's Highway is acquired by the State of Florida by purchase, as hereinbefore provided, the same shall immediately become a part of the State Highway System of the State of Florida, and shall be given its proper highway number by the State Road Department, and shall henceforth be maintained by the State Road Department; but said highway, or any part thereof, shall not be rebuilt prior to the completion of the highways designated first and second preferential highways under Chapter 10269, Acts of 1925, from funds set aside for the use of the State Road Department, and, in no event, shall said highway be rebuilt until subsequent Legis-

lative action, designating said highway as a preferential road, shall be had.

"Sec. 7. That the members of the said commission shall serve without compensation but they shall be entitled to receive their actual traveling and hotel expenses when away from their places of residence in connection with their duties as members of said commission, and a sum sufficient to defray said expenses is hereby appropriated out of any money now or hereafter in the State Treasury set aside for the use of the State Road Department for the construction or maintenance of roads and highways in the State of Florida, and shall be paid, upon vouchers approved by the State Road Department by warrants drawn by the Comptroller upon the State Treasury.

"Sec. 8. That the sum of Three Thousand Dollars, or so much thereof as may be necessary, be and is hereby appropriated out of any money now or hereafter in the State Treasury set aside for the use of the State Road Department for the construction or maintenance of roads and highways in the State of Florida, for the purpose of paying the Board of Engineers herein created, for any service rendered in the survey and examination of said Conner's Highway and in the preparation of their report and estimate, as hereinabove provided, and shall be paid, upon vouchers approved by said Conner's Highway Commission, by warrants drawn by the Comptroller upon the State Treasury.

"Sec. 9. If any section, provision, sentence, clause, or phrase of this Act, is for any reason, held unconstitutional, such decision shall not affect the validity of the remaining portions of this Act.

"Sec. 10. That all laws and parts of laws in conflict herewith be and the same are hereby repealed.

"Sec. 11. This Act shall take effect immediately on its becoming a law.

"Approved May 25, 1927."

The Constitution of the State contains the following:

"Each law enacted in the legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title." Sec. 16, Art. III.

"The legislature shall provide for raising revenue sufficient to defray the expenses of the State for each fiscal year, and also a sufficient sum to pay the principal and interest of the existing indebtedness of the State." Sec. 2, Art. IX.

"No money shall be drawn from the treasury except in pursuance of appropriations made by law." Sec. 4, Art. IX.

"The legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection, or for the purpose of redeeming or refunding bonds already issued, at a lower rate of interest." Sec. 6, Art. IX.

It is within the province of the legislature to purchase property for the State; and this function may, within appropriate limitations, be exercised through governmental administrative agencies. But an unlimited authority to purchase property for the State may be an unlawful attempt to delegate the legislative power. While discretionary authority within proper limitations to purchase property for the State may be conferred upon State agencies, subject to audit or approval by proper officers; yet such authority may not be delegated without definite limitations, as by attempting to confer upon individuals, without statutory limit and without supervision, revision, consideration, approval of audit by any responsible official, authority to

fix the price to be paid for property purchased by or for the State.

The power to appropriate State funds for a lawful State purpose is legislative, and may be exercised only through a duly enacted statute. Appropriations of State funds that are made by law can be used only for the payment of claims against the State that are duly authorized and are audited and approved according to law. The legislative powers to purchase property for the State and to make appropriations in payment of purchases, can lawfully be exercised only in the manner contemplated by the Constitution. Unlawful delegations of the legislative power are ineffectual; and in appropriate proceedings, an invalid attempt to delegate legislative power or an enactment that violates organic law, may be adjudged by the courts, whereupon the Constitution by its superior force renders the enactment inoperative.

By express terms, Chapter 11905, Acts of 1927, authorizes three engineers to be designated, one each by the State Road Department, the owners of the highway and the Governor; and such such ''Board of Engineers,'' not being officials, are required to ''make a survey and examination of'' the highway and to prepare and file verified triplicate detailed statements, certifying, in their judgment, an estimate of what it would cost the State to reproduce, at prevailing prices, said highway as now constructed, giving due consideration to the present condition of said highway. If the engineers fail to agree, the agreement of any two of them shall be considered the report required to be made on which report a binding obligation of the State is sought to be predicated. Whether this authority conferred upon the engineers and its resultant effect make the engineers officers of the State or not, the Act attempts to confer unlimited authority upon ''any two'' of the engineers, one of

whom is designated by the owner of the highway, to *estimate* not the value of the highway but what it would cost to reproduce the highway at prevailing prices, the State to be bound to purchase at the price so estimated, without definite appropriation or limitation and without examination, approval or audit by any official. This is clearly an unlawful attempt to delegate legislative power in that no limitation is placed upon the authority sought to be conferred upon the non-official engineers to fix as *an estimate,* not predicated upon value, the amount of money that is to be paid from the State Treasury. Besides this the Act provides that upon the report of the engineers filed with the Comptroller stating the amount agreed on by ''any two'' of the engineers, the Comptroller shall upon proper transfer of the highway to the State, draw and deliver to the sellers or their assigns a warrant drawn on the State Treasury for the first payment of the purchase price of the highway. Other stated annual payments, plus interest from the date of the first warrant, are provided to be made by warrants drawn by the Comptroller on the State Treasury. And finally ''on the first day of February, 1932, said Comptroller shall draw and deliver to the proper party or parties, a sixth warrant, against said fund above mentioned, payable to the proper party or parties, and his, its, or their assigns, for the remainder unpaid on the purchase price of said highway plus interest on said sum at not to exceed five per centum per annum from the date of said first warrant issued hereunder to the date of said sixth and last warrant.''

The amount of the last payment is without any limit whatever except that it is to ''be and is hereby appropriated out of any funds in the State Treasury set aside during the year of 1932, for the use of the State Road Depart-

ment, or its successor, for the construction or maintenance of roads and highways in the State of Florida.''

This attempt to confer upon non-official engineers unlimited authority to fix by estimate the amount that shall be paid from the State Treasury without audit or approval by any responsible official, is inoperative because it violates the intent of Section 4, Acticle IX, Constitution. See 185 N. W. 72.

The Act also provides that any sum or sums to become due for the purchase of the highways by the State may be assigned by instrument in writing, ''and upon proper instrument of assignment being filed with the Comptroller of the State of Florida, and approved by the Attorney General of the State of Florida, said Comptroller is hereby authorized and empowered to make said warrants, or any one of them, payable to the assignee thereof and deliver such warrant or warrants so assigned to said assignee.''

The peculiar terms of the Act and the proceedings sought to be authorized by it would in effect create a binding continuing interest bearing contract obligation of the State to pay money in the future that would violate the intent of Section 6, Article IX of the Constitution. See Advisory Opinion to the Governor filed Nov. 23, 1927, 114 Sou. Rep. 850.

As Chapter 11905, Acts of 1927, is in essential respects repugnant to applicable provisions of the Constitution, the enactment is inoperative. The demurrers and motions to quash in the *quo warranto* proceedings are overruled and the order appealed from in the injunction suit is affirmed.

It is so ordered.

ELLIS, C. J., AND TERRELL, STRUM AND BUFORD, J. J., concur.

Brown, J., concurs specially.

Brown, J. (concurring specially):

I concur with the holding in the majority opinion that this Act conflicts with the Constitution in a vital matter. Sec. 4 of Art. IX says:

"No money should be drawn from the Treasury except in pursuance of appropriations made by law."

This is certainly *not* an appropriation made by *law*, which is attempted to be provided for by this Act. The legislature writes a bill for an appropriation, leaving the amount blank, and then hands over the pen to a non-official board of appraisers, one of whom represents an adverse interest, and authorizes such board, or any two of the three members of it, to fill in the amount of the appropriation. That is the substance of it. They hand the board of engineers the State's blank check with power to fill in the amount. This is appropriation by proxy, not by the law-making body.

The legislature cannot thus be allowed to shirk the duty which the Constitution places upon it, to determine for itself, the amount of the appropriation. There is in my opinion no precedent in this State which would warrant us in holding valid such a radical departure from the plain intent of a Constitutional requirement. This renders the entire Act invalid. The facts of this case distinguish it from those cases involving appropriations to carry on the work—to pay necessary expenses for labor—and supplies—of government departments or institutions—administrative expenses, the exact amount and price of the numerous items of which cannot possibly be known in advance. Usually such funds are paid out on requisition or certification of some responsible State official, and the appropriat-

ing Act names a maximum sum. This case is not one of that class.

In other respects it seems to me that the Act is constitutional.