Mr. Robert F. Ensslin, Jr. Major General Florida Army National Guard The Adjutant General State Arsenal St. Augustine, Florida 32084
Dear General Ensslin:
This is in response to your request for an opinion on substantially the following questions:
 1. WHETHER THE DEPARTMENT OF MILITARY AFFAIRS IS AUTHORIZED TO DEPOSIT OUTSIDE THE STATE TREASURY IN VARIOUS LOCAL BANK ACCOUNTS MONEYS DERIVED FROM:
A. THE RENTAL OF ARMORIES AND OTHER FACILITIES;
 B. FINES IMPOSED BY A GENERAL, SPECIAL, OR SUMMARY COURT OF THE FLORIDA NATIONAL GUARD, OR;
 C. CONTRIBUTIONS BY COUNTIES, MUNICIPALITIES AND OTHER SOURCES FOR USE IN PROVIDING AND MAINTAINING ARMORIES?
 2. WHETHER THE DEPARTMENT OF MILITARY AFFAIRS IS REQUIRED PURSUANT TO s 120.53, F.S., TO ADOPT RULES AND REGULATIONS GOVERNING THE RENTAL OF ARMORIES AND OTHER FACILITIES?
 3. WHAT IS THE EMPLOYMENT STATUS OF PERSONNEL EMPLOYED AT ARMORY FACILITIES FOR FUNCTIONS SUCH AS BOOKKEEPING, MAINTENANCE, AND JANITORIAL SERVICES?
QUESTION ONE
Section 250.05, F.S., establishing the Department of Military Affairs, provides: "The agency of the state government heretofore known as the Military Department shall henceforth be known as the Department of Military Affairs of the State, which shall be composed of the military forces as provided in the laws of this state." The Adjutant General of the state is the Chief of the Military Department, s 250.10(1), F.S., now the Department of Military Affairs, s 250.05, F.S. Armories are established throughout the state for purposes of housing the militia, conducting Florida National Guard business, and for the proper storage, repair and issuance of military property. See, ss250.10(2), 250.40, and 250.41, F.S. Subsection (2) of s 250.41, F.S., provides: "The Armory Board shall also constitute a board for the general management and control of all armories when established, and may adopt and prescribe rules for their government and management." "The Armory Board of the state shall consist of the Governor, the Adjutant General, the state quartermaster, the general officers of the line, regimental commanders, group commander, and senior air commander in the active National Guard of the state." Section 250.40(1), F.S. This provision goes on to charge the Armory Board "with the supervision and control of all military buildings and real property within the state applied to military uses." Section 250.20, F.S., indicates and impliedly charges the post commander of each armory with the responsibility for the operation, maintenance, and repair of the armory facility, as well as the necessary expenses of the unit or units located at the armory, which expenses are paid from the funds appropriated to the Department of Military Affairs, subject to such rules as may be prescribed by the Adjutant General and accounted for as prescribed by rules. Section 250.41(2), F.S., in relevant part, provides that the commander of troops using the armories "will be held responsible for the safekeeping and proper care of such property and its protection against misappropriation or loss." Money for the acquisition, construction, and maintenance of the armories come from several sources, state, federal, and local. Section 250.09, F.S., provides that "[t]he Governor of Florida may take all necessary steps to obtain all appropriations, property and equipment, now or hereafter provided by the United States or authorized by law for the use, aid, equipment, benefit, or instruction of the National Guard."
1A. THE RENTAL OF ARMORIES AND OTHER FACILITIES.
You advise that the armories are utilized by and rented to private and other governmental agencies when not used for guard purposes, which rentals are for the purpose of providing additional funds for the operation and maintenance of the armories. You state that it is your opinion that it was the intent of the Legislature in enacting s 250.20, F.S., "to provide authority for local deposits and accounting of funds accruing to Florida National Guard units and armories at the armory level." Section 250.20, F.S., has nothing to do with rental fees received for the rental of the armories and armory facilities. This section pertains only to a monetary allowance appropriated to the Department of Military Affairs for purposes of the operation, maintenance, and repair of the armory facilities, and for necessary expenses of the units located at the armory. See, Ch. 83-300, Items #1293-1296, page 1718, Laws of Florida. Section 250.20, F.S., therefore, does not provide authority to deposit rental fees outside the State Treasury in accounts in local banks. And see, subsection (4) of s250.10, F.S., which provides that the state quartermaster "shall be accountable for all funds accruing to the Military Department, receive, preserve, repair, issue, distribute and account for all State Military Department property to include real estate pertaining to the State Armory Board; construct, maintain, improve and repair facilities pertaining to the Military Department and the armory board . . . ." There is no provision in Ch. 250, F.S., which controls or directs the procedures to be used in the collection, deposit or use of rental fees from the use of armory facilities. Thus, there is no authority contained in Ch. 250, F.S., which permits the deposit of rental fees outside the State Treasury. Cf., subsection (3) of s 250.24, F.S., relating to a revolving fund for pay and allowances of troops ordered out in active service of the state.
My examination of Ch. 250, F.S., leads me to the conclusion that these rental fees or charges are collected for the use of state property or facilities and are therefore state moneys. See, e.g., ss 250.40 and 250.41, F.S. Section 215.31, F.S., providing for the proper treatment of state funds, states:
 Revenue, including licenses, fees, imposts, or exactions collected or received under the authority of the laws of the state by each and every state official, office, employee, bureau, division, board, commission, institution, agency or undertaking of the state shall be promptly deposited in the State Treasury, and immediately credited to the appropriate fund as herein provided, properly accounted for by the Department of Banking and Finance as to source and no money shall be paid from the State Treasury except as appropriated and provided by the annual General Appropriations Act, or as otherwise provided by law.
Subsection (1) of s 215.32, F.S., in relevant part, provides that "[a]ll moneys received by the state shall be deposited in the State Treasury unless specifically provided otherwise by law . . . ." (e.s.) And subsection (1) of s 18.101, F.S., in pertinent portion, requires: "All moneys collected by state agencies . . . and departments shall, except as otherwise provided by law, be deposited in the State Treasury." (e.s.) The only statutory provision giving the Department of Military Affairs the express authorization to maintain a separate revolving fund outside the State Treasury is contained in s 250.24(3), F.S., relating to the pay and allowances of troops ordered out in active service of the state. The moneys in question, however, do not appear to be held in any authorized clearing or revolving account or accounts but are deposited in various operating accounts in local banks. No other provision in Ch. 250, F.S., nor any other statute that I am aware of, authorizes the Department of Military Affairs to maintain any moneys collected or received by that department in local banks outside the State Treasury. Absent statutory authority therefor, I must conclude that the Department of Military Affairs is not authorized by law to deposit moneys received from the rental of armories and armory facilities outside the State Treasury in local bank accounts.
1B. FINES IMPOSED BY COURTS-MARTIAL.
Moneys collected as a result of fines imposed by courts-martial are addressed by subsection (4) of s 250.36, F.S., which provides that all sums of money collected through fines imposed by a general, special, or summary court of the Florida National Guard "shall at once be paid over by the officer collecting the fine to the commanding officer of the organization to which the delinquent belongs, and will be taken up by the latter upon his account current and treated as public moneys." (e.s.) This statute does not expressly authorize or specifically provide for the retention of state funds outside the State Treasury, as required by ss 18.101 and 215.32, F.S. Nor does s 250.36(4), F.S., direct the disposition or use of such moneys for any military purpose or authorize their retention in a statutorily authorized account outside the State Treasury. These moneys do not appear to be held in an authorized clearing account, but even if they were maintained in such account, within a period approved by the State Treasurer or 40 days, whichever is shorter, the moneys would have to be transmitted to the Treasurer or distributed to a statutorily authorized account outside the State Treasury. See, s 18.101(1), F.S. The Department of Military Affairs is funded through the appropriations process as any other state agency. See, Ch. 83-300, Items #1293-1296, supra. The operations of the department are funded by the Legislature by present and future appropriations. Subsection (4) of s 250.36 specifically states that moneys received from fines from the several courts-martial are public money, and therefore must be treated accordingly. The provisions of Ch. 215 and s 18.101, F.S., set forth in Question One A. above are equally applicable to these moneys. Section 215.32(1), F.S., specifically requires that all moneys received by the state must be deposited in the State Treasury unless specifically provided otherwise by law. Section 250.36(4), F.S., does not specifically provide otherwise; nor does any other provision of Ch. 250 authorize the retention of fines from the several courts-martial in local bank accounts outside the State Treasury.
Accordingly, I must conclude that the Department of Military Affairs is not authorized by law to retain, maintain or deposit moneys received from fines from the courts-martial outside the State Treasury in accounts in local banks.
1C. CONTRIBUTIONS BY COUNTIES, MUNICIPALITIES AND OTHER SOURCES.
As to local sources of funds for providing and maintaining armories and other facilities, subsection (6) of s 250.40, F.S. provides in pertinent part:
 [T]he Armory Board shall have authority to receive from counties, municipalities and other sources, donations of land and contributions of money to aid in providing, improving and maintaining an arsenal, armories, campsites, target ranges, and other facilities, throughout the state, and any property so donated, shall be held as other property for the use of the state and such counties and municipalities are hereby authorized and empowered to make such donations of lands by deed or long-term leases and contributions of moneys for the purposes herein set forth, and to issue bonds or certificates of indebtedness to provide funds for such purposes; and boards of county commissioners are hereby authorized to levy taxes, not to exceed 1 mill, to provide funds for the construction of armories or for the retirement of such bonds or certificates of indebtedness issued to provide funds for the construction of armories.
Subsections (5) and (6) of s 250.40, F.S., clearly indicate the dual state and local purpose of the armories and the state militia. Subsection (5) states that "the defense of the country is a joint responsibility of all political divisions and subdivisions thereof, and since the National Guard is a citizen force by reason of its militia status, it is considered equitable that the expense of the maintenance of the National Guard be not only shared by the state with the Federal Government, but that it should properly be shared also by the counties, cities and other subdivisions of the state." See also, subsection (10) of s 250.40, F.S., authorizing county commissioners or municipal authorities in their discretion to appropriate moneys to pay the necessary expenses of any unit of the organized militia located in their respective counties or municipalities. Thus, the appropriation to the Armory Board or to local armories or militia units serves a city or county purpose and is an authorized appropriation. See also, s 250.41(1), F.S., which provides, among other things, that any and all moneys accruing to the Armory Board from the operation and management of the armories and other facilities described therein are hereby appropriated for the maintenance of state properties under control of the Armory Board. The Department of Military Affairs, as a state agency, is not authorized to receive such contributions, which are made to the Armory Board. Under the terms of the statute any contributions or appropriations made by local governments would be limited to the purpose stated.
There is no authorization in s 250.40, F.S., or any other provision of Ch. 250 to maintain such moneys in local bank accounts. Therefore, pursuant to ss 215.31, 215.32 and 18.101, F.S., such moneys must be deposited in the State Treasury. However, a separate trust fund within the State Treasury for such moneys limiting the use of such funds to the specified uses of s250.40, F.S., may be established pursuant to s 215.32(2)(b), F.S. Subsection (2)(b)1., in pertinent part, provides: "The Administration Commission shall have the power and authority to approve the establishment of any trust fund it deems necessary to preserve the integrity of any moneys received or collected by a state agency for a specific use or purpose authorized by law." (e.s.) Subsection (2)(b)3. referring to the moneys held in a trust fund established under this statute states: "All such moneys are hereby appropriated to be expended in accordance with the law or trust agreement under which they were received, subject always to the provisions of chapter 216 relating to the appropriation of funds and to the applicable laws relating to the deposit or expenditure of moneys in the State Treasury." See, e.g., Advisory Opinion to the Governor, 200 So.2d 534 (Fla. 1967) (authority exists under statutes relating to receipt and expenditure of state funds in accordance with law or trust agreement under which they are received for creation of trust fund either by legislature or by budget commission for purpose of receiving private contributions from persons or foundations to assist in law enforcement; such funds to be initially deposited in state treasury). Section 250.40, F.S., read with s 215.32(2), F.S., provide the authority for the Armory Board to receive such local contributions for specified military purposes and supplies the proper procedure for their deposit in a special segregated trust fund in the State Treasury and their eventual disbursement and expenditure. The Armory Board would need to apply to the Administration Commission for the establishment of such a trust fund and apply to the State Comptroller for a warrant for their disbursement at the time needed for their expenditure.
QUESTION TWO
You secondly question whether the Department of Military Affairs is required pursuant to s 120.53, F.S., to adopt rules and regulations setting forth procedures for the rental of armory facilities by private individuals and other governmental agencies when the armories are not used for National Guard purposes. Section 120.52(15), F.S., defines "rule" to mean "each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedure, or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule." (e.s.) Section 120.53(1)(a), F.S., among other things, requires each state agency to adopt as a rule a description of its organization, stating the general course and method of its operations and the methods whereby the public may obtain information or make submissions or requests. "Agency" is defined by subsection (1)(b) of s 120.52, F.S., to include: "Each other state officer and each state department, departmental unit described in s. 20.04, commission, regional planning agency, board, district, and authority . . . ." It is clear that the Department of Military, created pursuant to s 250.05, F.S., are state "agencies" within the meaning and purview of Ch. 120, F.S. Subsection (2) of s 250.41, F.S., in pertinent part, provides: "The Armory Board shall also constitute a board for the general management and control of all armories when established, and may adopt and prescribe rules for their government and management." Thus, rules relating to the rental of armory facilities are required to be promulgated and prescribed by the Armory Board. Section 250.10(1)(e), F.S., dealing with rules and regulations relating to the organization of the Florida National Guard is not pertinent to this situation. Neither the Adjutant General nor the Department of Military Affairs as such are authorized to promulgate rules and regulations prescribing the procedures for renting armory facilities; by statute, this is the responsibility of the Armory Board.
I am not aware of any provision of Ch. 250, F.S., or any other statute which exempts the Armory Board from the rule-making requirements of Ch. 120, F.S. See, e.g., AGO 77-46 which concluded among other things, that even though Ch. 106, F.S., hearings are exempted, either expressly or impliedly from the requirements of the Public Records Law and the Government-in-the-Sunshine Law, they are not thereby also exempted from the requirements of the Administrative Procedure Act (Ch. 120, F.S.), since neither Ch. 106 nor Ch. 120 in terms makes or provides for any exception for these hearings from any provisions of Ch. 120. Section120.63(1)(c), F.S., provides that upon application of any agency, the Administration Commission may exempt any process or procedure from one or more requirements of Ch. 120, F.S., when the Commission has found that conformity with the requirements of the part or parts of Ch. 120 for which the exemption is sought "would be so inconvenient or impractical as to defeat the purpose of the agency proceeding involved or the purpose of this act and would not be in the public interest in light of the nature of the intended action and the enabling act or other laws affecting the agency."
It is therefore, my opinion that unless exempted by the Administration Commission pursuant to s 120.63(1)(c), F.S., the Armory Board in the operation and rental of the armories to the public and other governmental agencies is subject to the rule-making requirements of Ch. 120, F.S.
QUESTION THREE
You also question the employment status of personnel employed at armory facilities for functions such as bookkeeping, maintenance and janitorial services. Subsection 250.40(1), F.S., charges the Armory Board with the supervision and control of all military buildings and real property within the state applied to military uses, and subsection (2) of s 250.41, F.S., vests the responsibility for the general management and control of all existing armories in the Armory Board. This provision goes on to provide: "All United States and state military property must be kept therein, and the commanders of troops using the armories will be held responsible for the safe-keeping and proper care of such property and its protection against misappropriation or loss." And s 250.20(1), F.S., in relevant part, states: "There shall be paid quarterly to the post commander of each National Guard armory from funds appropriated to the Department of Military Affairs, upon approval of the Adjutant General, a monetary allowance based on a calculation of need as determined by the Adjutant General . . . . The allowance shall cover costs for the operation, maintenance, and repair of the armory facilities . . . ." Sections 250.40, 250.41 and250.20, F.S., do not authorize the post commander or the Department of Military Affairs to delegate the responsibility for the safe-keeping and proper care, operation and maintenance of armory property and its protection against misappropriation or loss to anyone else. Nor do these provisions authorize the post commander to hire or appoint anyone else either full-time or part-time to perform these duties. Presumably, these part-time employees are being paid state funds and presumably they are being paid from funds under s 250.20, F.S.
The general rule of law is that public funds may be expended only as authorized by law. See, Florida Development Commission v. Dickinson, 229 So.2d 6 (1 D.C.A.Fla., 1969), cert. denied,237 So.2d 530 (Fla. 1970); AGO's 77-103, 75-120, 71-28. The Legislature exercises exclusive powers in determining how, when, and for what purposes state moneys should be applied in conducting the government. See, State v. Lee, 163 So. 859 (Fla. 1935); State v. Green, 116 So. 66 (Fla. 1928). Section 1, Art. VII, State Const., further prohibits all expenditures except those made in pursuance of appropriations made by law, the legislative power to appropriate state funds for state purposes being exercised only through duly enacted statutes. In AGO 71-28, this office stated: "The object of these constitutional provisions is to prevent the expenditure of public funds without the consent of the people as expressed by their representatives in legislative acts, and they secure for the legislature the exclusive power of determining how, when, and for what purpose, the public moneys should be applied in conducting government." Citing, Lainhart v. Catts, 75 So. 47
(Fla. 1917); State v. Lee, supra; State v. Green, supra. That opinion went on to state: "To perform any function for the state or to expend any moneys belonging to the state, the officer seeking to perform such function or to incur such obligation against the moneys of the state must find and point to a constitutional or statutory provision so authorizing him to do." Further, custom and practice do not provide authorization for the acts and expenditures in question. See, e.g., 67 C.J.S. Officers s 190.
The Department of Military Affairs has 105 positions approved with their salary dollars appropriated. See, Ch. 83-300, Laws of Florida, Item #1293, page 1718. Section 250.46, F.S., provides: "Officers and enlisted men of the militia employed by the military department of the state, who receive monthly salaries from the state for military duties, shall not be entitled to any other pay from the state for military service of any character . . . ." Persons employed in approved and authorized positions would be state employees of the Department of Military Affairs. See, s216.262(1)(a), F.S., in pertinent part, providing: "Unless otherwise expressly provided by law, the total number of authorized positions may not exceed the total provided in the appropriations act." Thus, any unauthorized or unapproved employees could not be considered state employees, nor would their compensation with state funds be authorized. This office, of course, cannot comment or pass upon any federal job or position descriptions or responsibilities, only what the Florida Statutes and law provides. If the statute and the appropriations act do not authorize any of the positions in question, then such personnel cannot be considered state employees, nor can such persons be compensated with state funds.
In summary, it is therefore my opinion that, absent statutory authority therefor, the Department of Military Affairs is not authorized by law to deposit moneys received from the rental of armories and armory facilities outside the State Treasury in local bank accounts; the department is not authorized by law to retain, maintain or deposit moneys received from fines from the courts-martial outside the State Treasury in accounts in local banks; the Armory Board is not authorized to maintain contributions from units of local government and other sources outside the State Treasury in local bank accounts, but the board is authorized to apply to the Administration Commission for the establishment of a separate trust fund within the State Treasury in order to limit the use of such contributions to the purposes for which such moneys were contributed or donated. Unless exempted by the Administration Commission pursuant to s 120.63(1)(c), F.S., the Armory Board in the operation and rental of the armories is subject to the rule-making requirements of Ch. 120, F.S. Finally, persons serving in approved and authorized employment positions are state employees, other nonauthorized or federally funded personnel cannot be considered state employees nor compensated with state funds.
Sincerely,
Jim Smith Attorney General
Prepared by:
Craig Willis Assistant Attorney General