The Honorable Bob Martinez Governor State of Florida The Capitol Tallahassee, Florida 32399-0001
Dear Governor Martinez:
I am honored to respond to your request for my opinion on the following questions:
 1. Would the repeal of Ch. 87-6, Laws of Florida, as amended by Chs. 87-72 and 87-101, Laws of Florida, by the Florida Legislature, effective January 1, 1988, without the Florida Legislature simultaneously replacing the revenue or simultaneously addressing the 1987 Appropriations Act, be a per se violation of s. 1, Art. VII, or any other applicable section of the Florida Constitution?
 2. Is the Administration Commission procedure set forth in s. 216.221, F.S., a constitutionally sufficient method for providing that revenues will meet expenditures in the event of a prospective deficit resulting from the prospective repeal of a tax?
 3. What is the date on which such a deficit would occur and prior to which the deficit must be cured — the date of the enactment of the repeal, the date on which the repeal becomes law, the effective date of the repeal, the date on which revenues will, in fact, be insufficient to defray expenditures, or on some other date?
In summary, I am of the opinion that:
 1) It is the responsibility of the Legislature to provide for a balanced budget for a fiscal period. Thus, if the Legislature takes action to repeal Ch. 87-6, Laws of Florida, as amended by Chs. 87-72 and 87-101, Laws of Florida, effective January 1, 1988, and the effect of that action would be to create an unbalanced budget for the fiscal year now in progress, it must also take concurrent action to balance the budget. This action must include either replacing the lost revenues or reducing the appropriations for the fiscal year, or a combination thereof, in order to meet the reduction in anticipated revenues.[1]
 2) In the event that the Legislature fails to take those steps necessary to ensure that revenues raised are equal to lawful appropriations made, or the Governor vetoes certain actions taken by the Legislature and such veto would create an unbalanced budget for the fiscal period, it is incumbent upon the Governor to call the Legislature back into special session to comply with this constitutional mandate.
 Your questions go to the very core of the integrity of the state's Constitution and the orderly, crisis-free operation of government.
 The Florida Constitution sets up a system for the orderly operation of government by establishing the framework under which government must function.[2] It is the Constitution which tells officers of the state at all levels what they can or cannot do. Statutory law serves to implement those powers granted by the Constitution, not to preempt or extend those powers. Each state and county officer, before entering upon the duties of his office, is required to swear or affirm that he will "support, protect, and defend the Constitution . . . of the State of Florida."[3]
 Under this system, the powers of the state are vested in three separate and distinct branches — the legislative, executive, and judicial.[4] The Constitution prohibits any person who belongs to one branch of government from exercising the powers of another branch unless expressly provided for in the Constitution.[5]
 Under this system of checks and balances, the Constitution secures to the Legislature the exclusive power of deciding how, when, and for what purposes public funds shall be applied in carrying on government, except where the Constitution itself provides to the contrary.[6] While the Governor participates in the legislative process through the exercise of his veto power,[7] he may not usurp the right of the Legislature to make decisions regarding the purposes for which public funds may be spent.
 While the statutes and the rules and regulations adopted thereunder further define this system of government, they may not alter this balance of power established by the Constitution.
 The Constitution requires that provision be made by law for raising sufficient revenue to defray the expenses of the state for each fiscal period.[8] As a participant in the law-making process, the Governor, as well as the Legislature, is responsible for ensuring that this constitutional obligation is met.[9]
Questions One and Three
As your first and third questions are interrelated, they will be answered together.
Section 1(d), Art. VII, State Const.,[10] contains a two-fold mandate to the Legislature: to provide for the raising of sufficient revenues to meet the lawful expenses of the state and to spend within the limits of that revenue which is raised.
Chapter 87-6, Laws of Florida, as amended by Chs. 87-72 and 87-101, Laws of Florida (hereafter the services tax) was passed by the Legislature to raise sufficient revenue to defray expenses of the state for the fiscal year 1987-1988. The Appropriations Act, Ch. 87-98, Laws of Florida, was passed in anticipation of receiving revenue from the services tax.
In my recent opinion to the Speaker of the House of Representatives and the President of the Senate, I concluded that the Legislature would not fulfill its constitutional responsibilities under s. 1, Art. VII, State Const., if it were to repeal the services tax without concurrently either replacing the revenues which would be lost by such a repeal or reducing appropriations in the 1987 Appropriations Act to meet the reduction in anticipated revenues.[11]
You ask whether the Legislature's repeal of the services tax, with an effective date of January 1, 1988,[12] without simultaneously replacing the revenue or addressing the 1987 Appropriations Act would be a per se violation of the Constitution.
You assume that an immediate violation of the Constitution would not occur by a prospective repeal of the tax because the projected deficit would not occur prior to the effective date of the repeal. In support of such an assumption, you refer to the decision of the Supreme Court of Florida in State ex rel. Kurz v. Lee, 163 So. 859
(Fla. 1935).
In Kurz the Supreme Court of Florida considered a mandamus action against the Comptroller by a state employee who asserted a claim to his contractual salary payment. This payment was to be made from the General Revenue Fund in conformity with the 1935 General Appropriations Act. However, it appeared that the Legislature, after having enacted a general appropriations bill and providing sufficient revenues to meet those expenses, subsequently made additional appropriations which the Comptroller claimed would produce a deficit in the general appropriations statute.[13]
The Comptroller's defense in not making payments to the employee was that it was his duty to withhold the salary payment until he could determine how to proportionally diminish it on account of insufficient funds in the State Treasury to pay both the original appropriations and those subsequently made.
The Court determined that the Comptroller's position was untenable as it contemplated unconstitutional action by the Legislature in not meeting its "mandatory constitutional duty" to provide sufficient revenues to meet state expenses pursuant to s. 2, Art. IX, State Const. 1885 (the predecessor provision to s. 1, Art. VII, State Const 1968[14]). Recognizing a distinction between the appropriation (i.e., the setting aside of a sum of money for a particular thing) and the actual disbursement of funds to meet the object of such an appropriation, the Court stated:
 Presumably, the Legislature does not undertake to make an appropriation of any funds not actually or potentially in hand. This is so since the making of an appropriation without having provided revenues from some source to meet it, or without any right to anticipate the accrual otherwise of funds in the treasury to enable the appropriation to be discharged by an actual disbursement of funds when it is due to be paid, would be the creation of an illegal state debt which would not constitute a current expense of the state inasmuch as it would have to be provided for by subsequent revenue legislation. In re Advisory Opinion to Governor, 94 Fla. 967, 114 So. 850. An appropriation of the latter character would fail for want of a fund to be appropriated and therefore be void, since every authorized appropriation contemplates the actual or potential existence of revenues already provided by law to be raised to enable it to be paid. (e.s.)[15]
Unlike Kurz, your question relates to actions not yet taken by the Legislature. However, the rationale of the Court in Kurz that the Legislature could not adopt an appropriation without having provided revenues from some source to meet it or without any right to anticipate the accrual of funds in the treasury would appear to be analogous to your inquiry. Here, as in Kurz, the Legislature has adopted a general appropriations act and provided sufficient revenues to meet those expenses. To the extent the Legislature seeks to reduce the revenues available to fund the appropriations which have already been made (and the effect of such reduction would be to create an unbalanced budget) without at the same time providing an alternative funding source or reducing the appropriation, such action would be in violation of its constitutional duties under s. 1, Art. VII, State Const.
Implicit in the Court's opinion is the conclusion that the Legislature may not intentionally take action which would have the effect of creating an unbalanced budget during the fiscal period. Rather the Legislature is under a constitutional mandate to ensure that the action it takes in a legislative session does not create an unbalanced budget for the fiscal period.[16]
You previously sought an advisory opinion of the Supreme Court of Florida on the constitutionality of the services tax.[17] I note that former Chief Justice Sundberg, arguing on your behalf before the Court, took the position that the Governor was under a similar constitutional mandate to ensure that a balanced budget for the fiscal period existed.[18] The former chief justice expressed your concerns that a "catastrophic fiscal and budgetary crisis" would result from a judicial determination midway through the 1987-1988 fiscal year that the services tax was invalid.[19]
A bill having the effect of creating an unbalanced budget during the fiscal period would, in my opinion, violate the Constitution on the date it becomes law.[20] The Legislature, in passing such a bill, and the Governor, in either signing or permitting the bill to become law without his signature, would not be fulfilling their constitutional duties to ensure that the budget is balanced for the fiscal period.
We are in the midst of the 1987-1988 fiscal year. Obligations are being incurred and expenditures being made by the state and its agencies under the Appropriations Act, Ch. 87-98, Laws of Florida, in anticipation of the revenues to be derived from the services tax. To conclude that by repealing a necessary revenue source in the future, the Legislature may abdicate its constitutional obligation to balance the budget does great injury to the constitutional scheme contemplated by s. 1, Art. VII, State Const.
As the Court in Kurz, supra, pointed out in discussing the nature of an appropriation:
 [A]ny attempt by the Legislature to diminish a payment of a constitutionally created obligation . . . would be a violation of section 2 of article 9 [s. 1, Art. VII, State Const. 1968]. . . .
 Every appropriation by the Legislature for a state purpose, as set forth in a general appropriation act . . . creates an authority of law in the official or department to whom or for which such appropriation is made, to incur an obligation on the state's part within the terms of the appropriation made, and entitles those who render services or furnish materials to the state thereunder to be paid in full for the services furnished.[21]
Thus, the Legislature is constitutionally required to balance revenues and expenditures for a fiscal period pursuant to s. 1, Art. VII, State Const. It must take whatever steps it can to ensure that the budget for the fiscal period is, and remains, balanced. Therefore, if the Legislature takes action to repeal the services tax and such repeal would create an unbalanced budget during the 1987-1988 fiscal year, it is my opinion that the Legislature must take concurrent action to balance the budget. Such action must include either replacing that source of revenue or amending the 1987-1988 Appropriations Act to reduce appropriations, or a combination thereof, to meet the reduction in anticipated revenues.
Question Two
Section 216.221, F.S., permits the Administration Commission to prevent a deficit from occurring either by providing for the reduction of all approved state agency budgets and releases or by releasing monies from the Working Capital Fund.[22]
Section 216.221, F.S., has not been interpreted by the appellate courts of this state. In addition, I have not found any evidence of legislative history surrounding the enactment of s. 216.221[23]
or its subsequent amendment[24] which would indicate that the statute may be used under the circumstances set forth in your second question.
The constitutionality of the statute would be extremely questionable if read to authorize the delegation of the Legislature's responsibility to the Administration Commission as a result of the intentional unbalancing of the budget by either the Legislature or the Governor through use of his veto power.[25]
As the Kurz Court recognized, the Constitution[26] secures to the Legislature, except where the Constitution itself provides to the contrary, the exclusive power of deciding how, when, and for what purposes public funds shall be applied in carrying on government.[27]
The obligation to balance the budget falls upon both the Legislature and Governor. It must be assumed that the Legislature intended a valid enactment rather than one contrary to the Constitution and such an enactment should be construed, if possible, in a manner so as not to conflict with the Constitution.[28]
Therefore, I must conclude that s. 216.221, F.S., was never intended to be used when an unbalanced budget occurs through the intentional actions of either the Legislature or the Governor through the use of his veto power.
You refer to your duties as "chief budget officer," a designation which is provided for by statute.[29] However, the responsibilities imposed by the Constitution upon the Legislature and the Governor to provide for a balanced budget obviously take precedence over any statutory designation of the Governor as "chief budget officer."[30] To permit the repeal of a revenue source which will result in an unbalanced budget during that fiscal period and to conclude that the Administration Commission may reduce expenditures constitutes an impermissible abdication by the Legislature of its constitutional duties.
Section 216.221, F.S., would logically apply in those situations when a balanced budget has been adopted but due to unforseen circumstances, such as occurred in 1982 when an unanticipated downward turn in the economy caused projected revenues to drop, it appears that a deficit will occur in the fiscal period.
Should the Legislature fail to comply with its constitutional duty to ensure that the budget is balanced for the fiscal period, it is my opinion that the Governor, in carrying out his constitutional responsibilities,[31] must call the Legislature back into special session, if he cannot himself balance the budget by use of his constitutional authority to veto specific items in the appropriations act.
As the Supreme Court of Florida noted in Kurz, each Florida governor since the adoption of the 1885 Constitution who has had occasion to interpret the constitutional provisions requiring that the Legislature ensure that state expenses not exceed revenues raised, has concluded that
 the duties imposed upon the Legislature by those provisions of the Constitution were mandatory, and that where such duties had not been adequately discharged . . . it thereupon became the duty of the Chief Executive in taking "care that the laws be faithfully executed" . . . to exercise his power under . . . the Constitution to call the Legislature into Extraordinary Session for the purpose of passing and enacting into law measures calculated to effectuate the requirements of said section 2 of article 9 . . . to make adequate provision by way of appropriations to . . . the current expenses of the state, and to provide for raising revenue sufficient to pay the same.[32]
Similarly, should the actions of the Governor by vetoing a bill passed by the Legislature result in the creation of an unbalanced budget for the fiscal year, it is my opinion that it is then incumbent upon the Governor to call the Legislature back into session to balance the budget for that fiscal period.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] If the Legislature repeals the services tax, effective at a future date, and such repeal would create an unbalanced budget, it must by law take concurrent action to balance the budget. Such action must include either providing an alternative revenue source or reducing the appropriations made for the fiscal period, or a combination thereof. Some question exists whether your amended call for a special session to consider the repeal of the services tax would permit the Legislature to consider both of these options. Alternatively, the Legislature could consider repeal of Ch. 87-6, Laws of Florida, as amended, effective on a date subsequent to the current fiscal period. Such an enactment, without a corresponding reduction in appropriations or replacement of revenues, would not violate the constitutional mandate in s. 1, Art. VII, State Const., since no budget for a subsequent fiscal period has been adopted. Such action therefore would not result in the creation of an unbalanced budget contrary to the constitutional mandate.
[2] Johns v. May, 402 So.2d 1166 (Fla. 1981) (Constitution is the framework of the government, containing the general principles upon which the government must function); City of Jacksonville v. Continental Can Company, Inc., 151 So. 488 (Fla. 1933); 10 Fla.Jur.2d Constitutional Law s. 2.
[3] Section 5(b), Art. II, State Const. 
[4] Section 3, Art. II, State Const. ("The powers of the state government shall be divided into legislative, executive and judicial branches.")
[5] Id.
[6] State ex rel. Kurz v. Lee, 163 So. 859, 868
(Fla. 1935). And see, State ex rel. Davis v. Green, 116 So. 66
(Fla. 1928) (power to appropriate state funds for lawful state purpose is legislative and may be exercised only through duly enacted statute).
[7] State ex rel. Boyd v. Deal, 4 So. 899, 906 (Fla. 1888) ("It cannot be said that the governor is no part of the law-making power. He is made a part by an express provision of the constitution [s. 8, Art. III, State Const., relating to executive approval and veto].")
[8] Section 1(d), Art. VII, State Const. 
[9] See, s. 1(a), Art. IV, State Const. (Governor "shall take care that the laws be faithfully executed. . . .")
[10] Section 1(d), Art. VII, State Const., states that "[p]rovision shall be made by law for raising sufficient revenue to defray the expenses of the state for each fiscal period."
[11] See, Opinion Letter of September 24, 1987, from The Honorable Robert A. Butterworth, Attorney General, to The Honorable Jon Mills, Speaker of the House, and The Honorable John Vogt, President of the Senate.
[12] There is a distinction between a bill becoming law and the law taking effect. Compare, s. 9, Art. III, State Const., stating that a statute takes effect on the 60th day after adjournment sine die of the session of the Legislature at which it was enacted unless another effective date is fixed by the act, with s. 8, Art. III, State Const., stating that every bill passed by the Legislature shall be presented to the Governor for his approval and shall become a law if he approves and signs it or fails to veto it within a certain time period.
[13] In considering the Comptroller's claim that there were inadequate revenues to fund the appropriation, the Court stated:
 Indeed, for aught that appears to the contrary by any allegation in the respondent's return, such contingent deficiency may never occur in fact if available resources are conservatively marshaled. 163 So. at 867. Such would not be the case in the instant situation where all parties appear to agree that, unless the Legislature in repealing the services tax, such repeal to take effect during this fiscal year, were to either reduce the appropriations made or to provide an alternative revenue source, or both, a deficit would occur. You have stated that your January 1, 1988, revenue reduction proposal (repeal of the sales tax on services and related taxes), if adopted, will result in a $399 million shortfall. See, Letter of September 24, 1987, from Governor Bob Martinez to Attorney General Bob Butterworth. And see, Letter of September 20, 1987, from Governor Bob Martinez to the President and Members of the Senate and the Speaker and Members of the House of Representatives, stating: I am proposing, effective January 1, 1988, the Legislature repeal the sales taxes on services . . . as well as the increases in the diesel fuel tax and the documentary surtax. . . . This repeal will result in a loss of an estimated $392 million in General Revenue for FY1987-88.
[14] Section 2, Art. IX, State Const. 1885, provides: "The Legislature shall provide for raising revenue sufficient to defray the expenses of the State . . . for each fiscal year, and also a sufficient sum to pay the principal and interest of the existing indebtedness of the State. . . ." Decisions construing predecessor provisions of the Constitution having the same import as the current provisions are sources or authority for the construction of the successor provisions. Weber v. Smathers, 338 So.2d 819
(Fla. 1976); In re Advisory Opinion to the Governor, 112 So.2d 843
(Fla. 1959).
[15] 163 So. at 868-869.
[16] Hathaway v. Munroe, 119 So. 149 (Fla. 1929) (s. 2, Art. IX, State Const. 1885 [the counterpart of s. 1, Art. VII, State Const. 1968] contemplates that sufficient revenue shall be raised each year to defray the expenses of the state for that year and during any fiscal year no indebtedness for expenses of the state shall be incurred substantially in excess of the revenues that may be provided for that year).
[17] See, Letter of May 12, 1987, from Governor Bob Martinez to Chief Justice Parker Lee McDonald and the Justices of the Supreme Court of Florida, requesting an advisory opinion of the Court; and In re Advisory Opinion to the Governor, 509 So.2d 292 (Fla. 1987).
[18] In responding to Justice Ehrlich's question during oral argument as to what constitutional provision would require the Governor to propose a supplemental budget should the sales and use tax on services fall, former Chief Justice Sundberg stated on behalf of the Governor that the portion of the Constitution which provides for a balanced budget relates to the Governor's duty to perform certain functions, one of which is to recommend the budget and to recommend sources of revenue. See, Video Tape p 2 of 2, oral argument before the Supreme Court of Florida, In re: Advisory Opinion of the Governor, Request of May 12, 1987, Case No. 70,533 (June 22, 1987). And see, Letter of May 12, 1987, from Governor Bob Martinez to Chief Justice Parker Lee McDonald and the Justices of the Supreme Court of Florida, stating:
 In furtherance of [s. 1(d), Art. VII, and s. 1(a), Art. IV, State Const.], I am required to submit to the Legislature a recommended budget which contains sufficient revenues to meet my recommended appropriations . . . and to amend my recommendations if it comes to my attention that revenue sources are insufficient to fund the appropriations. . . .
[19] Former Chief Justice Sundberg, appearing before the Court on your behalf, noted the "catastrophic fiscal and budgetary crisis [that] . . . would result from a judicial determination of [the] invalidity of Chapter 87-6, [Laws of Florida] midway through the 1987-1988 state fiscal year, or even later." Tape, supra.
[20] See, footnote 12, supra.
[21] 163 So. at 872.
[22] See, s. 216.221(2), F.S., which provides that if, in the opinion of the Governor, after consultation with the Revenue Estimating Conference, a deficit will occur in the General Revenue Fund, he shall so certify to the Administration Commission [the Governor and the Cabinet, see, s. 14.202, F.S.]. The commission may, by affirmative action, reduce all approved state agency budgets and releases by a sufficient amount to prevent a deficit in any fund or may authorize the use of the Working Capital Fund.
 Once, however, a deficit has been forecast and action taken to reduce approved operating budgets and release authority, no action may be taken by the commission to restore the reductions. Section 216.221(5), F.S. Cf., s. 215.18, F.S., authorizing transfers between funds.
[23] See, Ch. 69-106, Laws of Florida.
[24] See, s. 14, Ch. 71-354, and s. 18, Ch. 83-49, Laws of Florida.
[25] See, s. 8, Art. III, State Const., providing for the veto of bills by the Governor.
[26] Section 1(c), Art. VII, State Const., stating that "[n]o money shall be drawn from the treasury except in pursuance of appropriation made by law."
[27] 163 So. at 868. And see, s. 3, Art. II, State Const., stating that "[n]o person belonging to one branch [of government] shall exercise any powers appertaining to either of the other branches unless expressly provided herein."
[28] See, e.g., State ex rel. Johnson v. Goodgame, 108 So. 836
(Fla. 1926); Burnsed v. Seaboard Coastline Railroad Company,290 So.2d 13 (Fla. 1974).
[29] Section 216.221(1), F.S. (duty of Governor, as chief budget officer, to insure that revenues collected will be sufficient to meet appropriations and that no deficit shall occur in any state fund).
[30] Amos v. Mathews, 126 So. 308 (Fla. 1930) (to the extent that a legislative act violates the mandates of the Constitution, the act must fall); Holley v. Adams, 238 So.2d 401 (Fla. 1970).
[31] See, s. 1(d), Art. VII, State Const., and s. 1(a), Art. IV, State Const., providing that the Governor shall "take care that the laws be faithfully executed. . . ." And see, s. 216.221(1), supra. Cf., s. 216.168(4), F.S. (if Governor determines at any time after he has furnished the Legislature with his recommendations or amended recommendations, that the revenue estimates upon which his recommendations were based are insufficient, the Governor shall amend his revenues or appropriations to bring his recommended budget into balance).
[32] 163 So. at 862.